The amendment is an elimination of all reference to the second order, and a conformation of the undertaking accordingly. The substantial fact is that the defendant is confined to the notice of an appeal from one order, and that it is the same notice of appeal as that originally served, save that all reference to the second order is stricken out as surplusage, and the undertaking is made to conform. See Schermerhorn v. Anderson, 1 N. Y. 430. I am not prepared to say that such amendment was not within the discretion of the special term. See Shuler v. Maxwell, 38 Hun, 242; Fry v. Bennett, 16 How. Prac. 385, 2 Bosw. 684; Baylies, New Tr. & App. 250, and authorities cited. Of course, if the order in effect had permitted an appeal where none had been taken, or had changed the character or scope of an appeal, that would present a different question, and the order could not be sustained. Lavalle v. Skelly, 90 N. Y. 546; Piper v. Van Buren, 27 Hun, 384.

I think that the order should be affirmed, but, under the circumstances, without costs. All concur, except HIRSCHBERG, J., dissenting.

---

(75 App. Div. 282.)

### KOCH v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. October 3, 1902.)

1. CARRIERS—DUTY TO PROTECT PASSENGERS—EVIDENCE—DISMISSAL.

> Plaintiff's evidence, if credible, established the facts that, while a passenger on defendant's railroad train, other passengers, without provocation, began to insult and revile him and his companion, who were talking in the German language. They took hold of plaintiff's hat, and hustled him, and, on the conductor being asked to interfere, he said "he could do nothing; that if he asked them to stop they wouldn't do it." Afterward the conductor did ask them to "stop that fooling," at which they merely laughed, and he walked out of the car, when they resumed their boisterous conduct and insults. Just before a station was reached the other passengers threw plaintiff's hat on the floor, struck him, and when he rose to regain his hat threw him to the floor, and then walked over him out of the car to the station. Held, that it was error to dismiss plaintiff's case for damages at the close of such evidence.

Appeal from trial term, Kings county.

Action by Clemens Koch against the Brooklyn Heights Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Abram H. Dailey, for appellant.
I. R. Oeland, for respondent.

JENKS, J. A common carrier of passengers must exercise the utmost vigilance to maintain order and to guard its passengers from violence which reasonably might be anticipated or naturally might be expected under all the circumstances and in view of the number

¶ 1. See Carriers, vol. 9, Cent. Dig. § 1125.

and character of the passengers. This is the rule of Putnam v. Railroad Co., 55 N. Y. 108, 14 Am. Rep. 190, citing Flint v. Transportation Co., 34 Conn. 554, Fed. Cas. No. 4,873, and of Carpenter v. Railroad Co., 97 N. Y. 494, 497, 49 Am. Rep. 540. The plaintiff complained that while a passenger on a train of the defendant he was assaulted by other passengers, and he now appeals from a judgment entered upon a dismissal of his complaint at the close of his evidence. I think that he had made out a case which did not warrant a dismissal, and that, therefore, the judgment must be reversed, and a new trial must be granted. His evidence, if credible, established the following facts: The plaintiff, with a companion, became passengers of the defendant. When they began to talk in the German tongue, other passengers, without any provocation, began to insult and to revile them, to take hold of plaintiff's hat, and to hustle him. The plaintiff and his companion asked the offenders for peace without success, and thereupon the companion went out to the platform, which was separated from the interior of the car by a glass door, and asked the conductor to interfere. The conductor answered: "I can't do nothing. If I told them to stop, they wouldn't do it." And at first he did nothing, but afterwards he went into the car, told the offenders "to stop that fooling," and then went back. The offenders, who had only laughed at him, then resumed their boisterous conduct, their insults, and finally their "horseplay," so that just before they reached a station they threw the hat of the plaintiff to the floor, struck him, and when he rose to regain his hat threw him to the floor, and then walked over him out of the car to the station. This was no sudden indignity offered on the instant, and immediately followed by the escape of the offenders, but continued conduct of profanity, abuse, and "horseplay," which began when the plaintiff entered the car, continued for some time, and culminated in the assault and the injury. The conductor had notice at the beginning of this misconduct, and was requested to interfere. At first he did nothing, on the ground that, if he commanded the offenders to cease, they would not. And yet all that he finally did was that which he said would accomplish nothing. Moreover, when he did tell the offenders to stop, the answer was but laughter, which was but evidence of contempt or derision, and no assurance of decent behavior thenceforth. And thereupon the conductor washed his hands of the affair, and went away. To my mind, this does not, as matter of law, acquit the defendant of its obligation to the plaintiff. And I find no proof that warrants the conclusion that the conductor was necessarily called away by the discharge of his official duties, so that his mere perfunctory request, which he said would be futile, could be held, as a matter of law, the exercise of the utmost vigilance to protect the plaintiff from such flagrant abuse.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.