Arnold L. Fein, J.
This is a motion by plaintiffs in two actions for summary judgment declaring that assessments made by defendants pursuant to the New York Tax Law are unconstitutional and void under the commerce, import-export and supremacy clauses of the United States Constitution and pertinent statutes and regulations. Defendants in each action cross-move for summary judgment declaring that the assessments made pursuant to the New York taxing statutes are constitutional.
Plaintiffs, Ammex Warehouse Company, Inc. and AmmexChamplain Corp. (collectively, Ammex), commenced these actions after the dismissal of companion actions brought by them in the United States District Court for the Southern District of New York for injunctive and declaratory judgment relief against the members of the New York State Tax Commission on the ground that the assessment of taxes against them violated these clauses of the United States Constitution. A three-Judge Federal District Court, convened because plaintiffs’ complaints sought a "permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State” (US Code, tit 28, § 2281), held it was without jurisdiction to consider the claim, in the light of section 1341 of title 28 of the United States Code: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.”
The Federal court stated such a remedy was available to plaintiffs under CPLR 3001, declining to decide whether "an alternate state remedy — judicial review under (CPLR Article 78), of an administrative proceeding challenging the tax before the State Tax Commission is 'plain, speedy and efficient’.” (Ammex Warehouse Co. v Gallman, 72 Civ 306, 72 Civ 310 [SDNY].) As the court noted, the State had stipulated that no attempt to collect any of the taxes assessed would be made until after the final resolution of plaintiffs’ declaratory judg *329 ment action in the State courts. On this basis, plaintiffs commenced these actions.
A declaratory judgment action is the appropriate vehicle to challenge the constitutionality of a statute, whereas an article 78 proceeding is the proper means to determine whether the statute has been applied by a State officer in an unconstitutional manner. However, a cause will not be dismissed because the wrong procedure has been selected. If the court has jurisdiction over the parties, the court will convert it into the appropriate action or proceeding and decide the matter (Kovarsky v Housing & Development Admin. of City of N.Y., 31 NY2d 184; CPLR 103, subd [c]; McLaughlin, NY Trial Practice, NYLJ, Nov. 10, 1972, p 3, col 4). Here, plaintiffs attack the constitutionality of State taxing statutes as applied to them. Accordingly, an article 78 proceeding is the appropriate vehicle. Although the three-Judge Federal District Court, in declining jurisdiction, chose not to determine whether an article 78 proceeding is "plain, efficient and speedy”, within the meaning of the Federal statute, the court will convert the action into an article 78 proceeding and determine the issues.
Plaintiffs are New York corporations engaged in the business of selling cigarettes, liquor and other items for export at seven locations within the State of New York to persons crossing the border into Canada from New York. Plaintiffs operate under "Export Warehouse Proprietor” permits or licenses from the United States Government. They are not registered or licensed under New York State law to distribute or sell alcoholic beverages (Tax Law, § 421; Alcoholic Beverage Control Law, § 60 et seq.). The facilities of plaintiffs at each crossing location consist of a sales office and warehouses bonded by the United States Custom Service or the United States Internal Revenue Service. All the merchandise received and entered at plaintiffs’ bonded warehouses is produced or originates outside New York State. It is transported by a United States Government bonded carrier to plaintiffs’ warehouses at the designated border points and is then received and entered in plaintiffs’ bonded warehouses by United States customs officers who keep records of all merchandise received and withdrawn. So much of the merchandise as consists of American cigarettes and bourbon whiskey contains no Federal tax stamps. The cigarettes contain no health warnings as required by Federal law for cigarettes to be sold for consumption in the United States. The bourbon is contained in 40- *330 ounce bottles (Imperial quart), illegal for sale in New York State. All the other merchandise including scotch whiskey, foreign tobacco and perfumes, received and entered in plaintiffs’ bonded warehouses comes from abroad. It allegedly cannot be legally sold in the United States market for similar reasons and because it is packaged and marked for the Canadian market.
One who is about to cross the border into Canada, and who wishes to buy duty and tax free merchandise, enters one of plaintiffs’ sales offices near the border crossing. Each of these offices displays a notice required by the Bureau of Customs that "articles are sold for export only. Purchases brought back to the United States must be declared and are subject to duty and/or tax.” This same legend or notice is contained on all of plaintiffs’ invoices, used in selling the items for export. No merchandise is delivered at these stores. The customer receives an invoice recording the purchases and proceeds to a designated bonded warehouse, or to a designated location at the border crossing. He presents his invoice to an employee of Ammex and the items purchased are then turned over to the custody of the purchaser in his automobile, under the supervision of a customs bureau inspector. At each location the merchandise is turned over at a point where the customer is required to proceed directly to Canada. A customs inspector observes each customer cross the border and certifies on a copy of the invoice that the merchandise has been exported.
In 1971, the New York State Tax Commission began assessing alcoholic beverage, tobacco and sales taxes against plaintiffs under articles 18, 20 and 28 of the New York Tax Law.
This proceeding involves the imposition of these taxes upon goods thus sold by plaintiffs for export only.
With respect to the imposition of the alcoholic beverages tax, defendants rely upon the State’s undoubted power to control and regulate the sale within and the transportation or importation of intoxicating liquors into the State. (Cooley v Board of Wardens of Port of Philadelphia, 12 How [53 US] 299; the "Wilson Act”, US Code, tit 27, § 121; the "Webb-Kenyon Act”, US Code, tit 27, § 122; US Const, 21st Amdt; Matter of Rahrer, 140 US 545; Seagram & Sons v Hostetter, 16 NY2d 47, affd 384 US 35, reh den 384 US 967.) Defendants conclude from these and other authorities that the State has the power not only to regulate but to tax the sale and distribution of these alcoholic beverages in the State without *331 contravening the commerce clause of the United States Constitution (Phillips v Mobile, 208 US 472; State Bd. of Equalization v Young’s Market Co., 299 US 59).
Plaintiffs contend (1) these statutes, the Twenty-First Amendment and the cases relied on by defendants are inapplicable because they involve the State’s power to regulate and tax alcoholic beverages transported or imported "into” the State for delivery or use therein, whereas the transit of the liquor here involved was "through” New York not "into” the State, within the meaning of the Twenty-First Amendment; (2) the merchandise went through New York "for export only”; (3) the export process carried on in New York was authorized by the Federal Government under its complete and exclusive power to regulate foreign commerce; (4) the taxes imposed constitute a burden and restraint upon foreign commerce thus violating the commerce clause; and (5) the congressional intent demonstrated by providing not only for tax free exports but tax free imports would be frustrated if a State may tax the exports or exportation process.
It is beyond dispute that Congress possesses the sole power to regulate commerce with foreign nations and among the several States (US Const, art I, § 8, subd 3). Although it is not constitutionally permissible for a State to impose taxes where it is evident that there would be an infringement upon the congressional power to regulate commerce (Matter of Gulf Oil Corp. v McGoldrick, 256 App Div 207, affd 281 NY 647, affd sub now. McGoldrick v Gulf Oil Corp., 309 US 414), a State may exercise its police power to regulate commerce by imposing taxes for State purposes when the taxes do not infringe upon the authority of Congress to regulate commerce with foreign nations and among the several States (McGoldrick v Berwind-White Co., 309 US 33, 45; State Bd. of Equalization v Young’s Market Co., supra).
It is undisputed that Ammex’s operation and activities are governed by section 66 of title 19 of the United States Code; the Tariff Act of 1930, as amended (US Code, tit 19, § 1311 et seq.), and certain provisions of the Internal Revenue Code of 1954 (US Code, tit 26, § 5005 et seq., as amd), as well as the regulations promulgated by the Secretary of the Treasury pursuant to these statutes (19 CFR Parts 18, 19; 27 CFR Part 251 et seq.) as clarified and interpreted by the Commissioners of Customs and Internal Revenue.
Thus, plaintiffs’ activities and operations are exclusively *332 under Federal governmental control. Merchandise imported into the State from other States or foreign countries by plaintiffs is under Federal bond. The merchandise is stored in bonded, warehouses. Sale and delivery are under Government supervision. However, defendants submit a series of surveys and statements to demonstrate that not all of the goods is actually exported and that some merchandise is ultimately diverted back into the United States. It is noted that the assessments were first imposed in 1971 and the surveys and statements were made in 1972. Moreover, these surveys and statements fail to establish unlawful diversion back into New York State. They are largely conclusory. Nor do they demonstrate that any of the merchandise assessed was actually diverted into the State of New York rather than exported as certified by a customs official. The attorney’s affidavit and accompanying surveys and statements submitted by defendants do not constitute evidentiary proof sufficient to defeat plaintiffs’ motion for summary judgment (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338). Nor do they entitle defendants to summary judgment or even raise genuine issues warranting exploration at a plenary hearing. (Terranova v Emil, 20 NY2d 493; Philip A. Feinberg Inc. v Varig, 80 Misc 2d 305, affd 47 AD2d 1005.)
In considering the imposition of alcoholic beverage taxes by the State, recognition must be accorded the State’s right to regulate the distribution and consumption of alcoholic beverages within the State under the pertinent provisions of the Twenty-First Amendment to the United States Constitution: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.”
Palpably the amendment acknowledges State power to regulate the distribution and consumption of alcoholic beverages within the State. However, it does not repeal the commerce clause of the Federal Constitution (Hostetter v Idlewild Liq. Corp., 212 F Supp 376, affd 377 US 324; Women’s Liberation Union of Rhode Is. v Israel, 379 F Supp 44; see Collins v Yosemite Park Co., 304 US 518). Nor does it repeal the export-import clause of the Federal Constitution. (Department of Revenue v James Beam Co., 377 US 341.) Although the transactions sub judice occur within the geographical limits of the State of New York in areas not under the exclusive *333 jurisdiction of the United States Government (see United States v Mississippi Tax Comm., 412 US 363), nor within the concurrent jurisdiction of the State and the United States (Ammex Warehouse Co. v Department of Alcoholic Beverage Control of California, 224 F Supp 546, affd 378 US 124), the sales and delivery are made solely for use in a foreign country and are effectuated under the supervision and control of the Federal Government pursuant to Federal law.
There is no claim that plaintiffs have violated any of the prescribed State or Federal laws or regulations in conducting their business. Consequently, the only State interest in these transactions is to prevent diversion or use of the alcoholic beverages within its borders. As noted, defendants have failed to show such diversion or use within the State of the liquor sought to be taxed. It must be concluded that the State’s purpose in assessing these taxes was not to regulate or control the passage of alcoholic beverages within or through the State to prevent unlawful diversion, but rather to raise revenue. Such State action is not constitutionally permissible (Hostetter v Idlewild Liq. Corp., supra; Gulf Oil Corp. v McGoldrick, supra; see, also, Ammex Warehouse Co. v Department of Alcoholic Beverage Control of California, supra; During v Valente, 267 App Div 383).
The alcoholic beverage taxes here involved are sought to be imposed under subdivision 1 of section 424 of the Tax Law, which imposes a tax on a distributor of alcoholic beverages for sale or commercial use within New York State. Such a distributor is required to register with the State of New York for the sale of alcoholic beverages within the State "except a sale, if any, as to which this state is without power to impose such condition”. (Tax Law, § 421.) Presumably in recognition of this statutory acknowledgment of lack of State power, plaintiffs have not been required to register as distributors or to obtain licenses for the sale of liquor (see Alcoholic Beverage Control Law, § 60 et seq.; Hostetter v Idlewild Liq. Corp., supra; Ammex Warehouse Co. v Department of Alcoholic Beverage Control of California, supra).
A State cannot tax "imports” or "exports” (Department of Revenue v James Beam Co., 377 US 341, supra). Nor may a State impose a tax on the export process (Richfield Oil Corp. v State Bd. of Equalization, 329 US 69; see, also, Kosydar v National Cash Register Co., 417 US 62; Empresa Siderurgica v Merced County, 337 US 154). A tax which is added to the *334 purchase price of an item being imported or exported is a tax on importation or exportation (see Brown v Maryland, 12 Wheat [25 US] 419). It is within the legitimate exercise of the power of Congress reasonably to determine what constitutes an export (Gulf Oil Corp. v McGoldrick, supra; Epstein v Lordi, 261 F Supp 921, affd 389 US 29). Exportation has been defined as a "severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country” (see Swan & Finch Co. v United States, 190 US 143, 145).
Whether the assessed taxes on alcoholic beverages are excise taxes, entitled to be levied on the sale of alcoholic beverages in the State of New York (Tax Law, § 424; see Matter of House of Seagram v State Liq. Auth., 51 Misc 2d 157, affd 30 AD2d 380, affd 25 NY2d 865, cert den 396 US 121), or are taxes on exports not constitutionally permissible under the import-export clauses of the United States Constitution, depends on whether there was a taxable sale or delivery within New York State.
Plaintiffs have followed the precise procedure prescribed by the Federal Government for selling merchandise for export. On this basis, Federal governmental entities have exempted merchandise sold by plaintiffs from Federal taxes or duty. Plaintiffs claim this determination is controlling on the State, thereby precluding the imposition of State taxes on the liquor. However, the Federal scheme does not pre-empt State action where the local transaction is separate and distinct from that transportation which is considered interstate commerce. (Matter of Schaefer Brewing Co. v Gerosa, 4 NY2d 423, app dsmd 358 US 282; International Harvester Co. v Department of Treasury, 322 US 340; Matter of House of Seagram v State Liq. Auth., supra.)
Although the entire transaction is supervised and under the control of Federal governmental officials, payment for the bonded merchandise is made at one of plaintiffs’ sales offices in New York and delivery of the merchandise is made to the customer in his automobile headed for Canada at a designated point in New York at the border crossing. Accordingly defendants contend that the export or exportation process relied on by plaintiffs is broken because the sale and delivery of the merchandise is completed within the geographical limits of New York, thus making the transaction subject to State taxes.
On its facts, the case is strikingly similar to Ammex Ware *335 house Co. v Department of Alcoholic Beverage Control of California (224 F Supp 546, affd 378 US 124, supra), where sale and delivery took place within a 60-foot strip adjoining the Mexican border, but within the geographical limits of the State of California. The 60-foot strip was under the joint control of the State of California and the United States Government. The issue there tendered was not the power of the State to tax the transaction but rather its power to prohibit such transactions entirely. In enjoining such action by California, the court held that the physical delivery to the customer at the California side of the border gave the customer merely physical custody and not control and possession so as to constitute a complete transaction subject to prohibition by the State of California. The court stated (p 549): "Thus, the liquor is continually in bond until the delivery to the customer at the border * * * If he does not cross the border, the custody may be taken from the customer.” The court expressly reserved the question of the validity of reasonable regulation by the State aimed at preventing unlawful diversion or use of alcoholic beverages within the State.
The Supreme Court of the United States affirmed, in reliance upon Hostetter v Idlewild Bon Voyage Liq. Corp. (212 F Supp 376, affd 377 US 324, supra). Hostetter ruled that New York could not require distributors to be licensed and thus become subject to tax with respect to liquor sold in duty free shops at Kennedy Airport to customers en route overseas, and delivered to such customers on board their planes. The purport of these cases is that where liquor originates outside the State into which it is brought solely for export and is sold and delivered within the State solely for export under Federal supervision and under conditions insuring exportation, no incident takes place subject to the taxing jurisdiction of the State. To permit State regulation, except where clearly designed to prevent diversion or use within the State, would violate the commerce, import-export and supremacy clauses of the United States Constitution. These cases also teach that the Twenty-First Amendment is applicable only to "in State” transactions and use.
It follows that where bonded liquor is sold and delivered under Federal regulation and under the supervision of Federal governmental officers and segregated from the common mass of goods in this country with the intention of uniting such liquor to the mass of goods belonging to some foreign *336 country, such liquor is not subject to State taxes (Gulf Oil Corp. v McGoldrick, 256 App Div 207, affd 281 NY 647, affd 309 US 414, supra; Epstein v Lordi, 261 F Supp 921, affd 398 US 29, supra; Hostetter v Idlewild Liq. Corp., supra; Ammex Warehouse Co. v Department of Alcoholic Beverage Control of California, supra).
Here, payment for bonded liquor, originating outside New York State, is made at one of plaintiffs’ sales offices in New York and delivery is made to the customer in his automobile headed for Canada at a designated point in New York at the border crossing. The entire transaction is supervised by and under the control of Federal governmental officers to insure that the goods are taken across the border into Canada. The United States Customs Service in response to plaintiffs’ inquiry has rendered an advisory opinion that the general term bond under which plaintiffs operate is not relieved until the merchandise is actually landed in Canada.
Accordingly, no incident occurs in New York which is subject to the excise tax sought to be imposed. New York is therefore precluded from imposing the alcoholic beverage tax here in issue.
The same principles are applicable to the cigarette and sales taxes. Moreover, in reviewing the assessment of the cigarette and sales taxes, it must be noted that the Twenty-First Amendment to the United States Constitution has no application to the imposition of such taxes. The cigarette taxes are imposed pursuant to sections 471 and 471-a of article 20 of the New York Tax Law, on the possession and use of cigarettes within New York State. The sales taxes are imposed pursuant to article 28 (§ 1105, subd [a]) of the Tax Law. As with the alcoholic beverage tax, defendants contend that the sale of cigarettes occurs within the geographical limits of New York State involving a taxable event and that sales taxes are assessed because there is a complete retail sale of tangible personal property within the State. In essence, the argument is that since title to the goods passes to the customer while in the State of New York, and the purchaser transports the goods to Canada, there is a local transaction separate and distinct from that transportation considered to be import-export. Defendants distinguish Hostetter (supra), on the ground that this case does not involve sales in a free-trade zone and that although the goods are in bond prior to delivery to the *337 customer, the bond is broken upon delivery to the customer within the State.
The absence of a free-trade zone is not critical in determining whether goods are exempt from State regulation or taxation. (Gulf Oil Corp. v McGoldrick, supra; Epstein v Lordi, supra; Richfield Oil Corp. v State Bd. of Equalization, 329 US 69, supra.) Nor is it controlling that the locus of the transactions here involved is not under the joint control of the United States and a State as in Ammex Warehouse Co. v Department of Alcoholic Beverage Control of California (supra). As with the liquor, delivery of the bonded cigarettes and other goods within New York State did not terminate the exportation process. There was no sale for use within New York. Nor was there a completed sale within New York. Thus sale of these items in this manner is immune from State taxation for revenue purposes (McGoldrick v Gulf Oil, 309 US 414, supra; Epstein v Lordi, supra).
Accordingly, the assessment of alcoholic beverage, cigarettes and sales taxes upon plaintiffs’ merchandise by the New York State Tax Commission was unconstitutional and invalid.