LINDA MANFREDONIA et al., Respondents, v AMERICAN AIR-
LINES, INC., Appellant.

Second Department, May 14, 1979

## APPEARANCES OF COUNSEL

*John M. Downing (Leonard M. McEvoy* of counsel), for appellant.

*Baron & Vesel (Martin L. Baron* of counsel), for respondents.

## OPINION OF THE COURT

HOPKINS, J.

This appeal comes to us from a judgment following a trial on liability only, and submits questions of law both intricate and significant. The plaintiffs' judgment follows the plaintiffs' action based on a breach by the defendant of the State "Dram Shop Act" (General Obligations Law, § 11-101), alleging that the plaintiff Linda Manfredonia was assaulted by an intoxicated fellow passenger while in flight in the defendant's air transport from New York to Los Angeles, with a stopover at Dallas.

The jury determined that the defendant was not guilty of common-law negligence in serving alcoholic beverages to the assaultive passenger or in failing to exercise proper care toward Linda to protect her from injury and humiliation. The jury's verdict in favor of the plaintiffs ensued after a charge by the Trial Judge that a breach by the defendant of the provisions of section 11-101 of the General Obligations Law would render the defendant liable for the damages caused by the assault on Linda, if the jury found that the defendant had sold intoxicating beverages to the offending passenger when the passenger was intoxicated and that his intoxication had contributed to Linda's injury.

The defendant urges reversal on the ground that the Dram Shop Act cannot have extraterritorial effect and that, in any event, the plaintiffs only interjected the statute as a ground for liability at the time the case was about to go to the jury and therefore waived the provisions of the statute.

██ We reverse and grant a new trial. We agree with the defendant's contention that the statute cannot be applied to interstate flights, and that, consequently, the judgment cannot rest on the theory that the defendant was liable for a violation of the statute. However, we grant a new trial because the complaint states a cause of action for recovery based on an alleged violation by the defendant of the regulations of the Federal Aviation Administration forbidding the service of alcoholic beverages to an intoxicated passenger aboard an aircraft.

I

On May 2, 1975 Linda Manfredonia was a passenger on the defendant's flight from New York to Los Angeles, with an intermediate stopover at Dallas. On the flight from New York to Dallas she was seated across the aisle from a young man. She testified that the man was served several drinks of alcoholic beverages by the defendant's attendants, and that he became increasingly intoxicated and abusive, made sexual advances to her, and when she did not respond, suddenly punched her in the eye. Although the defendant produced witnesses who denied that she had complained to the defendant's employees about the man's behavior,[1] the testimony at the trial reflected a fair factual question, and the determination by the jury of the dispute cannot be assailed for lack of a substantial factual foundation. Rather, the questions before us are matters of law.

The plaintiffs' complaint alleged three causes of action: (1) that the defendant was guilty of common-law negligence when, as a common carrier, it failed to exercise due care to protect Linda's safety as a passenger; (2) that the defendant was guilty of the violation "of the applicable laws that prohibit the sale of alcoholic beverages to a person in a state of intoxication";[2] (3) a derivative cause of action by John Manfredonia, Linda's husband, for loss of services. In response to a

---

[1] One of the other passengers on the flight called by the defendant testified that Linda had complained about the man's conduct, but also stated that she had been struck by him after she had uttered a racial slur.

[2] This cause of action alleged only a claim for punitive damages. At the trial, against the defendant's objection, the plaintiffs were permitted by the Trial Judge to amend the complaint to seek actual damages as well in this cause of action. The defendant urges that ruling as error. In view of our ultimate disposition, we find it unnecessary to discuss this contention.

demand for a bill of particulars, the plaintiffs amplified the second cause of action to claim that they were depending, as a source of liability, on the "[r]egulations of the Federal Aviation Administration of the United States Government." No specific mention of the Dram Shop Act was made in plaintiffs' bill.

At the trial, nevertheless, in spite of the defendant's objection, the plaintiffs claimed a violation of the Dram Shop Act as the ground of liability under the second cause of action, and the case was submitted by the Trial Judge to the jury under that theory. The Trial Judge also submitted to the jury the theory of recovery under common-law negligence as alleged in the first cause of action.

The jury found in favor of the defendant on the first cause of action and in favor of the plaintiffs on the second and third causes of action. The questions of law, as we see them, are: (1) whether the Dram Shop Act truly can apply to an air carrier in interstate flight, either as an exercise of extraterritorial jurisdiction or in the face of Federal pre-emption; (2) whether a cause of action can be based on a violation of Federal regulations akin to the provisions of the Dram Shop Act; and (3) whether a State court can enforce the regulations through a common-law action.

## II

The Dram Shop Act was first enacted in 1873 (L 1873, ch 646), although an earlier act (L 1857, ch 628) provided its genesis (*Bertholf v O'Reilly,* 74 NY 509, 518). In substance, the Dram Shop Act, now section 11-101 of the General Obligations Law, after several revisions (see *Quinlan v Welch,* 141 NY 158; *Westbrook v Miller,* 98 App Div 590; *Wilcox v Conti,* 174 Misc 230) last embodied in section 16 of the Civil Rights Law, attaches liability to a person who sells intoxicating beverages to another who is intoxicated and inflicts personal injury.[3] The statute creates a right of action unknown at common law in that it permits a new kind of damages to be recovered (*Bert-*

---

**3.** Section 11-101 of the General Obligations Law provides, in part, as follows: "1. Any person who shall be injured in person, property, means of support, or otherwise by an intoxicated person, or by reason of the intoxication of any person, whether resulting in his death or not, shall have a right of action against any person who shall, by unlawful selling to or unlawfully assisting in procuring liquor for such intoxicated person, have caused or contributed to such intoxication; and in any such action such person shall have a right to recover actual and exemplary damages."

*holf v O'Reilly,* 74 NY 509, 524, *supra; Volans v Owens,* 74 NY 526), and the contributory negligence of the injured person is no defense *(Mitchell v The Shoals,* 19 NY2d 338). The statute should be read and considered with section 65 of the Alcoholic Beverage Control Law, as carrying out the State public policy to protect the community by discouraging the sale of intoxicating beverages to one already intoxicated (cf. *Playford v Perich,* 2 Misc 2d 170, 173; 2 NY Jur, Alcoholic Beverages, § 116, p 615).

It therefore follows that the adverse verdict of the jury on the first cause of action sounding in common-law negligence does not in itself conclude the plaintiffs' second cause of action, for the causes of action are diverse. The first cause of action rests on the defendant's common-law duty as a common carrier to shield its passengers from harm arising from foreseeable risks (see *Koch v Brooklyn Hgts. R. R. Co.,* 75 App Div 282, 283; 7 NY Jur, Carriers, §§ 393, 394). The second cause of action, in contrast, is derived, as the complaint alleges, from the sale of alcoholic beverages in violation of the "applicable laws". The Dram Shop Act is not based on common-law negligence *(Moyer v Lo Jim Cafe,* 19 AD2d 523, affd 14 NY2d 792; 2 NY Jur, Alcoholic Beverages, § 116, p 614).

The question then arises whether the statute applies extraterritorially.

## III

In 1884—some 11 years after the original passage of the Dram Shop Act—it was held that the statute had no extraterritorial effect *(Goodwin v Young,* 34 Hun 252, 254). In *Goodwin (supra),* a New York tavern owner illegally sold liquor to a patron who crossed into Vermont and there caused damage. On the principles of *lex loci* then prevailing, the court held that no cause of action lay under the statute.

The plaintiffs argue in answer that the principles of *lex loci* no longer are the criteria for the ascertainment of tort liability; that indeed the courts now look to a test based on the significant contacts of the parties to the forum—what in truth is the center of gravity of the dispute (see, e.g., *Babcock v Jackson,* 12 NY2d 473; *Neumeier v Kuehner,* 31 NY2d 121; *Miller v Miller,* 22 NY2d 12). They point out that in *Miller v Miller (supra),* the court refused to apply Maine law, limiting wrongful death damages to $20,000, and applied New York law, without limitation of amount of recovery, in the case of a

New York resident killed in an automobile accident in Maine. But the parallel sought to be drawn by the plaintiffs is not complete. In those cases the negligence of the defendants turned on common-law doctrine, whereas here the plaintiffs' second cause of action is grounded purely on statute.

The true inquiries must be whether New York intended that its statute should operate beyond its limits, and then, whether as a matter of Federal control, the statute can operate beyond the New York boundaries, even assuming that the statute may have been intended to have that effect. *Goodwin v Young* (34 Hun 252, *supra)* is authority of an earlier period, closer to the time of the passage of the statute, that the statute was not intended to operate outside New York. In other jurisdictions where the question has been considered the construction of the statute has varied.

In Illinois, for example, the courts have steadfastly refused to give extraterritorial effect to the Dram Shop Act *(Eldridge v Don Beachcomber, Inc.,* 342 Ill App 151; *Butler v Wittland,* 18 Ill App 2d 578; *Colligan v Cousar,* 38 Ill App 2d 392; *Liff v Haezbroeck,* 51 Ill App 2d 70; *Graham v General U.S. Grant Post,* 43 Ill 2d 1; *Waynick v Chicago's Last Dept. Store,* 269 F2d 322, cert den 362 US 903). *Eldridge,* the first case to consider the issue in Illinois, depended in part on *Goodwin v Young (supra),* in part on the fact that the Illinois act did not state that it was to be given extraterritorial effect, in part on the construction previously placed on Illinois' workmen's compensation laws that they did not extend beyond State limits, and in part on the finding that the Dram Shop Act was penal in nature and thus should be strictly construed.

Yet, in Minnesota *(Schmidt v Driscoll Hotel,* 249 Minn 376), in Connecticut *(Zucker v Vogt,* 200 F Supp 340), and in Iowa *(Bankord v De Rock,* 423 F Supp 602), a person suffering injuries out of the State as a result of a violation of the Dram Shop Act within the State was allowed recovery. In these instances the modern tendency in choice of law doctrine to enforce a remedy according to the grouping of contacts was followed.[4]

█ In New York the reasons relied on in *Eldridge (supra)* would not fully support the conclusion reached in Illinois.

---

4. In California recovery was allowed under the modern rule of choice of law doctrine, not on the Dram Shop Act, but on common-law negligence *(Bernhard v Harrah's Club,* 16 Cal 3d 313).

New York recognizes the general rule that a statute is presumed to apply only within the State (56 NY Jur, Statutes, § 263, pp 708-709), and that the Legislature may limit the territorial application of a statute (cf. *Kaplan v Equitable Life Assur. Soc. of U. S.,* 177 Misc 792, affd 261 App Div 1067; *Strassberg v New England Mut. Life Ins. Co.,* 575 F2d 1262). On the other hand, although at first New York workers' compensation laws were held not to be applied outside of the State *(Ewen v Thompson-Starrett Co.,* 208 NY 245), a later decision concluded that a resident of the State sent by his employer to perform work in another State and injured there was entitled to the benefits of the laws *(Matter of Post v Burger & Gohlke,* 216 NY 544). Moreover, in *Farber v Smolack* (20 NY2d 198) our statute imposing liability on the owner of an automobile for injuries resulting to one through the negligence of a driver granted the use of the automobile was held to apply to New York residents injured in an automobile accident occurring in North Carolina, under the modern theory of choice of law. We cannot say, therefore, that the factors in *Eldridge (supra)* which led the Illinois court to its construction of the Dram Shop Act have like weight in New York.

There is one obvious difference in all the cases invoking the Dram Shop Act, however, from the case before us. In this case, the consumption of the liquor causing Linda's injury did not take place in the State. As the beverages were served during the flight, both the sale of the liquor and the injuries occurred beyond the limits of New York (cf. Alcoholic Beverage Control Law, § 106, subd 11). In all of the other cases the sale of the liquor took place in the State which had enacted the statute, although the injury was incurred outside the State. As the public policy reflected by our statute was to curb the evils and injuries arising from the sale of intoxicating beverages in the State *(Bertholf v O'Reilly,* 74 NY 509, 524, *supra),* the purpose of the statute would not be furthered by enforcing the statute against sales not within the State.

In addition, to enforce the statute for the benefit of any passenger embarking on a flight from New York to an out-of-State destination would cause chaotic and irreconcilable results springing from the uneven protection afforded to passengers boarding the flight from States not having the benefits of the Dram Shop Act.

We think, therefore, that the statute should not have been charged to the jury.

## IV.

On another ground we think that the Dram Shop Act cannot be applied to an interstate flight. First, the Twenty-first Amendment does not grant the State power to regulate the sale of alcohol out of State or in an area under exclusive Federal control (*United States v State Tax Comm. of Miss.,* 412 US 363, 375; *Hostetter v Idlewild Bon Voyage Liq. Corp.,* 377 US 324, 329-334; *Ammex Warehouse Co. v Procaccino,* 85 Misc 2d 327, 333, affd 55 AD2d 535). Federal law exclusively governs the operation, control and safety of air carriers (US Code, tit 49, § 1421 *et seq.).* Pre-emption by Congress of a field of regulation implies an inherent need for nationwide uniformity and Federal primacy (see, e.g., *Florida Lime & Avocado Growers v Paul,* 373 US 132, 142; *Hines v Davidowitz,* 312 US 52, 66), particularly in the field of air commerce (*City of Burbank v Lockheed Air Term.,* 411 US 624, 638). Varying State Dram Shop Acts would perforce disturb the uniformity of Federal regulations.

We note that although the Dram Shop Act cannot be the source of liability against the defendant, this in itself does not mean that the plaintiffs are relegated to administrative relief before the Civil Aeronautics Board. The Federal regulatory statute provides that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies" (US Code, tit 49, § 1506; cf. *Nader v Allegheny Airlines,* 426 US 290, 301-303). Hence, State actions are preserved, and our next consideration is whether the plaintiffs can assert a cause of action not based on the Dram Shop Act, but on a Federally created remedy.

## V

In the bill of particulars supplied by the plaintiffs with respect to the second cause of action, they asserted that they relied on Federal regulations as the basis of their claim, without specifically referring to any regulation. In fact, the Federal Aviation Administration under statutory authority (US Code, tit 49, § 1421, subd [a]) has forbidden the service of alcoholic beverages to an intoxicated person (14 CFR 121.575).[5]

---

5. That regulation reads, in pertinent part:

"§ 121.575 Alcoholic beverages.

"(a) No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operating the aircraft has served that beverage to him.

■ The breach of the statute may ground a cause of action for damages arising from injury sustained thereby, if, as outlined in *Cort v Ash* (422 US 66, 78): (1) the regulation was intended to protect a particular class of persons; (2) there was an intention to create or deny a private right; (3) the right would be consistent with the goal of the statute; and (4) the cause of action is one traditionally left to State law. Under Federal decisional law the tests prescribed in *Cort (supra)* have been said to be satisfied in the instance of a private right of action for a breach of Federal statutes and regulations governing air carriers (see, e.g., *Gabel v Hughes Air Corp.,* 350 F Supp 612, 614-615; *Rauch v United Instruments,* 548 F2d 452, 457; *Sanz v Renton Aviation,* 511 F2d 1027, 1029; *Matter of Paris Air Crash of March 3, 1974,* 399 F Supp 732; *Neiswonger v Goodyear Tire & Rubber Co.,* 35 F2d 761, 763; *Stork v United States,* 430 F2d 1104). The *Cort* rule is compatible with New York law *(Daggett v Keshner,* 284 App Div 733, 738; see 6 AD2d 503, affd 7 NY2d 981; *Pierce v International Harvester Co.,* 61 AD2d 255; cf. Prosser, Torts [4th Ed], § 36, pp 190-197).

We address the *Cort* prescriptions to determine whether a cause of action is implied in favor of the plaintiffs for a breach of the Federal statute and regulation.

1. Was the statute intended to protect a particular class of persons? The statute, it is clear, is instinct with a pervasive interest in safety of the passengers (see, e.g., US Code, tit 49, § 1301, subd [4]; 1421, subd [b]; 14 CFR 91.9). The plaintiff Linda Manfredonia was entitled as a passenger to the observance of the regulation concerning the sale of liquor to one intoxicated. An intoxicated passenger may pose a serious threat to the safety of all on the aircraft.

2. Was there an intention to create or deny a private right? The statute is silent as to a denial of a private right. The savings clause, quoted above (US Code, tit 49, § 1506), suggests itself that private enforcement of a remedy is available. Moreover, the Federal courts have construed the statute to provide a privately enforceable right in several areas (see, e.g., *Fitzgerald v Pan Amer. World Airways,* 229 F2d 499; *Williams v Trans World Airlines,* 369 F Supp 797, affd 509 F2d 942

"(b) No certificate holder may serve any alcoholic beverage to any person aboard any of its aircraft who-

"(1) Appears to be intoxicated".

[racial discrimination]; *Neiswonger v Goodyear Tire & Rubber Co.*, 35 F2d 761, *supra* [injury on ground from low flying aircraft]; *Gabel v Hughes Air Corp.*, 350 F Supp 612, *supra* [personal injury from operation of aircraft]).

3. Would the right be consistent with the goal of the statute? The implication of a right of action is not only consistent with, but also in furtherance of the goal of protecting the safety of passengers and aircraft generally. If private persons are afforded the right of action, the compliance with safety regulations by air carriers is encouraged and the regulations strengthened by economic sanctions in favor of those who have been injured by noncompliance.

4. Is the cause of action one traditionally left to State law? New York law is, as we have noted, consistent with the construction of the statute as implying a cause of action *(Daggert v Keshner,* 284 App Div 733, *supra).* Moreover, New York courts should enforce Federal law in the area peculiarly under Federal control *(Teamsters Local v Lucas Flour Co.,* 369 US 95, 102-104). The public policy of New York, exemplified in the Dram Shop Act, is entirely in accord with the objectives of the Federal statute in the endeavor to safeguard the members of the community from preventable harm.

For these reasons, we are satisfied that the plaintiffs may claim the benefit of the Federal statute and the regulation adopted under its authority. The second cause of action may therefore proceed and a new trial is required.

## VI

It follows that the judgment should be reversed insofar as appealed from, and a new trial directed on the second cause of action, based upon the alleged breach of the Federal regulation, and the derivative cause of action.

MOLLEN, P. J., RABIN and MARTUSCELLO, JJ., concur.

Interlocutory judgment of the Supreme Court, Queens County, entered July 12, 1978, reversed insofar as appealed from, on the law, and new trial granted, with costs to abide the event.