OPINION OF THE COURT
Simons, J.
In this action for a declaratory judgment concerning the power of the State Tax Commission to impose a tax on an out-of-State plaintiffs wholesale distribution of motor fuel to Seneca Indian retailers on the Allegany and Cattaraugus Reservations, plaintiffs appeal pursuant to permission granted by the Appellate Division on the certified question: "Did this court err as a matter of law in reversing the order of Special Term and denying plaintiffs’ motion for a preliminary injunction?” We hold that the Appellate Division’s determination of the motion for a preliminary injunction was erroneous and, consequently, we reverse the order below and remit the matter to the Appellate Division for further proceedings.
*539 I
The underlying facts are not in dispute. Plaintiffs, Herzog Brothers Trucking, Inc. and its corporate principals, allege in their complaint that Herzog is a Pennsylvania corporation engaged in wholesale and retail distribution and sales of motor fuels. In June 1984, Herzog began wholesale distribution of motor fuel to the Seneca Nation of Indians on its Allegany and Cattaraugus Reservations in New York, selling the motor fuel to authorized Indian retail establishments on these reservations. Such sales constituted Herzog’s only transactions in motor fuel in this State. Prior to June 1, 1985, sales tax on motor fuel was to be collected at the time the fuel was sold to the ultimate consumer, and a motor fuel tax was to be collected upon the first sale by the distributor (see, Tax Law, former arts 12-A, 28). Believing themselves exempt from State regulation and taxation of motor fuel purchases, the Seneca Indian retailers refused to pay Herzog any State taxes on these transactions. Nevertheless, in October 1984, the State Tax Commission began assessing motor fuel taxes against the corporation.
On June 1, 1985, in order to prevent the continued circumvention of the sales tax on motor fuel, the Legislature amended article 28 of the Tax Law to impose the sales tax at the time that the motor fuel is imported or first sold (see, L 1985, ch 44, § 20, adding Tax Law § 1102). Thus, at the present time, articles 12-A and 28 of the Tax Law impose motor fuel and sales taxes upon the importation and sale of motor fuel within the State (see, Tax Law §§ 284, 284-a, 284-c; § 1101 [b] [4] [ii]; §§ 1102, 1105). The taxes are assessed to, and collected from, the distributor and then included in its wholesale price (see, Tax Law § 282 [1]). Following purchase from the distributor, the retailer includes the tax in its retail price and passes it on to the ultimate consumer. Where the ultimate consumer is an Indian, or otherwise exempt from taxation, the taxes are refunded, or a credit is given (see, Tax Law §§ 289-c, 1139).
Plaintiffs brought this declaratory judgment action in November 1985 seeking a declaration that the State of New York is without power to impose the motor fuel taxes and sales taxes on Herzog’s sales to Indians on Indian reservations; that the Tax Law, both prior and subsequent to the 1985 amendment, does not expressly apply to its sales of motor fuel to Indians on Indian reservations and that, insofar as the Tax Law purports to impose these taxes on such sales, it is *540 unconstitutional; that the State of New York is without power to regulate or interfere with sales of motor fuel by Herzog to Indians on Indian reservations and, to the extent State requirements concerning registration, recordkeeping, filing of returns and claiming of refunds apply to such sales, the requirements are unconstitutional. Thereafter, by motion for an order to show cause, plaintiffs moved for a preliminary injunction enjoining and restraining the State of New York from determining, collecting or attempting to collect any motor fuel taxes and sales taxes on the sales of motor fuel by Herzog to Indians on Indian reservations and from otherwise interfering with or regulating such sales. Special Term granted plaintiffs’ motion for a preliminary injunction, reasoning that "[t]he eventual success of plaintiffs on the merits of their application is manifest”. On appeal, the Appellate Division reversed the order on the law and denied the motion for a preliminary injunction. The court found that plaintiffs failed to establish the requisite clear likelihood of success on the merits, because the challenged provisions of the Tax Law merely imposed a " 'minimal burden’ of collecting the taxes from a non-Indian consumer on an Indian tribe or retailer as long as the legal incidence of the taxes falls on non-Indian purchasers” (122 AD2d, at 520). The Appellate Division, therefore, held that the imposition of motor fuel and sales taxes on Herzog’s motor fuel transactions with the Seneca Nation was "fair, impartial and permissibly constitutional.” Two Justices dissented from the Appellate Division order of reversal on the ground that Federal law preempts and prohibits the imposition of taxes by a State when the burden of such taxes are borne by reservation Indians, or when the tax is applied to the trade relationship between reservation Indians and their suppliers.
II
In general, the determination of an application for a provisional remedy is addressed to the discretion of the lower courts and — absent a question of power to exercise discretion, or abuse in the exercise of discretion, in determining the application — is beyond this court’s review (see, Brady v Ottaway Newspapers, 63 NY2d 1031). When, however, the Appellate Division denies discretionary relief on an issue of law alone, and makes clear that no question of fact or discretion entered into its decision, that question of law is considered *541 decisive of the correctness of the determination and this court has jurisdiction to review it on a properly certified question from the Appellate Division (see, Cohen and Karger, Powers of the New York Court of Appeals § 88, at 377 [1952 rev ed]; Public Adm’r v Royal Bank, 19 NY2d 127, 129-130). The only issue before us on this appeal by certified question is whether, on the motion for a preliminary injunction, plaintiffs failed to establish, as a matter of law, the requisite clear likelihood of success on the merits of their challenge to the Tax Commission’s imposition of taxes on their motor fuel transactions with the Seneca Nation of Indians residing on the Allegany and Cattaraugus Reservations.
¡II
Plaintiffs contend that New York may not constitutionally tax their wholesale sales of motor fuel to Indian retailers on Indian reservations because the State is precluded from doing so "by reason of the United States constitution and of the laws of the United States enacted pursuant thereto” (Tax Law § 284 [1]; § 1102). They argue that the Federal Indian trader statutes (25 USC §§ 261-264), enacted pursuant to article I (§ 8, cl 3) of the United States Constitution,[1] vest the Commissioner of Indian Affairs with the sole power and authority to regulate trade with Indians. They contend that, by virtue of such legislation and supporting regulations, Federal law has totally preempted the regulation of sales made to Indians on Indian reservations, including State taxation of Indian trade (citing Central Mach. Co. v Arizona Tax Commn., 448 US 160). Plaintiffs further maintain that, although Indian vendors in a chain of distribution might be required to collect a tax from a non-Indian retailer customer, the Indian vendors cannot be required to pay a State tax to their suppliers in connection with their wholesale purchases (relying on California State Bd. of Equalization v Chemehuevi Indian Tribe, 474 US 9, reh denied — US —, 106 S Ct 839; Washington v Confederated Tribes, 447 US 134, reh denied 448 US 911; Moe v Salish & Kootenai Tribes, 425 US 463).
Defendants counter that the tax scheme here challenged neither imposes a tax upon plaintiffs or the Seneca Nation of Indians, nor places an impermissible burden upon a transac *542 tion between them. The Tax Law merely requires that Herzog and the Indian retailers keep adequate records of their sales, and imposes upon them a minimal burden of precollecting the taxes due from the non-Indian consumer. Where the ultimate sales are made to Indians, the State refunds that portion of the tax prepaid by the retailer and distributor. Defendants maintain that the motor fuel tax scheme is proper and constitutional, for Federal law has not preempted the State of New York from exercising its authority to compel the assistance of distributors and retailers in collecting taxes owed by non-Indian consumers (relying on Washington v Confederated Tribes, supra). Rather, the Supreme Court has upheld State tax schemes that require prepayment of State taxes by Indian vendors (citing Moe v Salish & Kootenai Tribes, supra; Washington v Confederated Tribes, supra). Defendants contend that as long as the actual burden, as well as the legal incidence, of the motor fuel taxes falls on the non-Indian consumer — which it does here — the taxing scheme is constitutional.
The Supremacy Clause of the United States Constitution[2] invalidates State laws that " 'interfere with, or are contrary to’ ” Federal law (see, Hillsborough County v Automated Med. Labs., 471 US 707, 712, quoting Gibbons v Ogden, 9 Wheat [22 US] 1, 211). The operation of the Supremacy Clause is not dependent on an express congressional statement of preemption. Rather, "Congress’ intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room’ for supplementary state regulation” (id., at 713, citing Rice v Santa Fe Elevator Corp., 331 US 218, 230; see also, Tribe, American Constitutional Law § 6-25, at 384). Preemption of a whole field of regulation is likewise inferred where Federal interest in that field " 'is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject’ ” (Hillsborough County v Automated Med. Labs., 471 US, at 713, supra, quoting Rice v Santa Fe Elevator Corp., supra).
As a leading treatise on Indian law indicates: "Indian affairs *543 occupy a unique place in Supremacy Clause law and theory” (Cohen, Federal Indian Law, at 272 [1982 ed]; see generally, id., at 270-279). This is apparent from the fact that the Supreme Court has relied almost exclusively on prior legislative and judicial precedent involving Indian matters, without relying on Supremacy Clause precedents in other fields, in determining the scope of the preemption doctrine in Indian cases (id., at 272-273). Inasmuch as the Constitution vests the Federal Government with exclusive authority over relations with Indian tribes, Congress has plenary and preemptive power in all matters concerning the Indians, subject to the Bill of Rights and other constitutional considerations (see, Montana v Blackfeet Tribe, 471 US 759, 764 [construing US Const, art I, § 8, cl 3]; and see, Tribe, American Constitutional Law § 16-14, at 1018).
In general, Indian tribes and individuals are exempt from State taxation within their own territory. Congress may authorize the imposition of State taxes upon them if it so chooses, but it has never done so as a general matter and the Supreme Court has refused to uphold State taxation of Indians absent an "unmistakably clear” expression of congressional intent to authorize the particular tax (see, Montana v Blackfeet Tribe, 471 US, at 764-766, supra; see generally, Cohen, Federal Indian Law, at 407-412; Goldberg, A Dynamic View of Tribal Jurisdiction to Tax Non-Indians, 40 Law & Contempt Probs 166, 183 [1976]). States may validly impose a nondiscriminatory tax on the non-Indian customers of Indian retailers doing business on reservations, however, even if the tax seriously disadvantages or eliminates the Indian retailer’s business with non-Indians (Washington v Confederated Tribes, 447 US 134, 151, supra [discussing the principles set forth in Moe v Salish & Kootenai Tribes, 425 US 463, supra]). If the incidence of the tax falls on non-Indians, the State’s action in imposing the tax is permissible because it does not interfere with any supervening Federal law and does not violate the proscription against direct taxation of Indians without clear congressional consent (see, Moe v Salish & Kootenai Tribes, supra, at 483, construing Mescalero Apache Tribe v Jones, 411 US 145, 148). Thus, the Supreme Court has approved State taxation schemes requiring Indian retailers on reservations to collect the tax imposed on the non-Indian customer, reasoning that such a requirement "is a minimal burden designed to avoid the likelihood that in its absence non-Indians purchasing from the tribal seller will avoid payment of a concededly *544 lawful tax” (Moe v Salish & Kootenai Tribes, supra, at 483; see also, California State Bd. of Equalization v Chemehuevi Indian Tribe, 474 US 9, supra). The same rationale has been applied to State taxation schemes that require Indian retailers on reservations to keep detailed records of all exempt and nonexempt sales of taxable items (see, Washington v Confederated Tribes, 447 US 134, 160, supra). Defendants contend that the present statutes are lawful because they do no more than what these Supreme Court decisions permit. The Appellate Division agreed with this reasoning but we are persuaded otherwise.
Concededly the tax assessed here must ultimately be paid by non-Indians, but that is not the end of the inquiry. When a State tax is imposed upon, or otherwise burdens, a transaction between a non-Indian customer and an Indian individual or tribe, and the legal incidence of the tax is determined to properly fall on the non-Indian party, the Supreme Court has nonetheless "examined the language of the relevant federal treaties and statutes in terms of both the broad policies that underlie them and the notions of sovereignty that have developed from historical traditions of tribal independence” to determine whether the method of collecting the State tax is constitutional (Cohen, Federal Indian Law, at 413, quoting White Mountain Apache Tribe v Bracker, 448 US 136, 144-145). Where, as here, the taxation scheme imposes obligations on a wholesale trader to Indian retailers on Indian reservations, a different result follows than that urged by defendants, and adopted by the Appellate Division, because Federal law preempts and invalidates the State action (see generally, id., at 413-414).
The Supreme Court has drawn a clear distinction between State taxation schemes which merely require Indian retailers to collect a valid tax on non-Indian purchasers and those that burden persons engaged in trade with Indians on reservations (see, Washington v Confederated Tribes, 447 US 134, 155, supra; Moe v Salish & Kootenai Tribes, 425 US 463, 482-483, supra). A dispositive factor recognized by the court in drawing such a distinction is the clearly manifested intent of Congress in enacting the trader laws to foster tribal self-government and economic development by enactment of the trader statutes (see, Washington v Confederated Tribes, supra, at 155 [construing 25 USC § 261 et seq.J). No similar intent is implicated in sales by reservation Indians to non-Indians (id., at 155-156). Thus, since there is no dispute that plaintiff Herzog *545 is a "trader” within the meaning of the Federal Indian trader laws,[3] we must consider the Indian trader statutes, and the cases construing them, to determine if Federal law preempts the State tax at issue.[4]
Ever since Congress passed a statute in 1790 regulating the licensing of Indian traders, the Federal Government has "comprehensively regulated trade with Indians to prevent 'fraud and imposition’ upon them” (Central Mach. Co. v Tax Commn., 448 US 160, 163, supra [discussing Act of July 22, 1790, ch 33, 1 US Stat 137]). The present laws, known collectively as the Indian trader statutes, similarly "incorporate a congressional desire comprehensively to regulate businesses selling goods to reservation Indians for cash or exchange” (Washington v Confederated Tribes, 447 US 134, 155, supra). In Warren Trading Post v Tax Commn. (380 US 685, 687), which involved a retail trader’s challenge to a State tax on gross proceeds or income from sales imposed on its trade with Indians on the Navaho Reservation, the Supreme Court emphasized that the Federal Government has exercised "a sweeping and dominant control over persons who wished to trade with Indians and Indian tribes”. In construing the Federal Indian trader laws, and the implementing regulations, the court observed that "[t]hese apparently all-inclusive regulations and the statutes authorizing them would seem in themselves sufficient to show that Congress has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders” (id., at 690 [n omitted]).
Later, in the Central Mach. Co. case involving an Arizona "transaction privilege” tax assessed against the seller of trac *546 tors to an enterprise of the Gila River Indian Tribe, the Supreme Court reaffirmed that the mere existence of the Indian trader laws preempted the field of transactions with reservation Indians, even where the seller was an unlicensed trader with no permanent place of business on the Indian reservation (see, Central Mach. Co. v Arizona Tax Commn., 448 US 160, 165, supra). The court noted that "[i]t may be that in light of modern conditions the State of Arizona should be allowed to tax transactions such as the one involved in this case. Until Congress repeals or amends the Indian trader statutes, however, we must give them 'a sweep as broad as [their] language’ * * * and interpret them in light of the intent of the Congress that enacted them” (id., at 166 [citations omitted]).
The Supreme Court cases construing the Indian trader statutes are dispositive. We determine that Congress has preempted the field of regulating trade with Indians on reservations and has left "no room” for the application of supplementary State tax laws, such as the one here at issue, that impose "additional burdens” on Indian traders (see, Warren Trading Post v Tax Commn., 380 US 685, 690, supra). Thus, no matter how minimal the burden imposed by the motor fuel taxation scheme on Herzog, as a trader to the Seneca Nation, such regulation is preempted by the Federal Indian trader laws and the Appellate Division erred, as a matter of law, in holding that plaintiffs had not established a "clear likelihood of success on the merits” on their application for a preliminary injunction.
Accordingly, the certified question should be answered in the affirmative, the order of the Appellate Division reversed and the matter remitted to that court for a consideration of undetermined questions (see, Public Adm’r v Royal Bank, 19 NY2d 127, 129-130, supra).
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, with costs, and case remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.

.Article I (§ 8, cl 3) of the Constitution grants Congress the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes”.

.The Supremacy Clause of the United States Constitution, contained in article VI, clause 2 provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”

.25 USC § 261 provides: "The Commissioner of Indian Affairs shall have the sole power and authority to appoint traders to the Indian tribes and to make such rules and regulations as he may deem just and proper specifying the kind and quantity of goods and the prices at which such goods shall be sold to the Indians.” The Supreme Court has construed the term "trader” to apply to any person introducing goods, or trading, in Indian country or on an Indian reservation (see, Central Mach. Co. v Arizona Tax Commn., 448 US 160, 164-165 [relying on 25 USC § 264]).

.A 1906 opinion by this court holds that, because of the unique history of the Seneca Nation of Indians in this State, New York has exclusive sovereignty and jurisdiction over these Indians, and the Indian trader statutes are not applicable to their affairs (see, Jemison v Bell Tel. Co., 186 NY 493). Although Jemison has never been explicitly overruled, its holding has been implicitly rejected by subsequent decisions of this court and of the Supreme Court (see, e.g., Warren Trading Post v Tax Commn., 380 US 685; People ex rel. Cusick v Daly, 212 NY 183, 196-197).