The **FORT BELKNAP INDIAN COMMU-NITY OF the FORT BELKNAP INDI-AN RESERVATION**, Plaintiff,

v.

The **STATE OF MONTANA**, Defendant.

No. CV–89–215–GF.

United States District Court,
D. Montana,
Great Falls Division.

April 22, 1992.

James L. Vogel, Hardin, Mont., for plaintiff.

Marc Racicot, Atty. Gen., Clay R. Smith, Asst. Atty. Gen., Helena, Mont., for defendant..

MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

Plaintiff, the Fort Belknap Indian Community ("the Community"), instituted the present declaratory judgment action, pursuant to 28 U.S.C. §§ 2201–2202, challenging the State of Montana's authority to prosecute Indian persons for criminal violations of state liquor laws that occur within Indian country.[1] Having considered the ar-

---

1. Title 18 U.S.C. § 1151 defines "Indian country" as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the Unit-

guments presented by the parties in support of their respective motions for summary judgment, the court is prepared to rule.[2]

## BACKGROUND

This matter has its genesis in a criminal proceeding in the District Court of the Seventeenth Judicial District, Blaine County, Montana, charging Caroline Ann Brown and Harley LeRoy Brown with the felony offense of possession and sale of beer and wine without a license in violation of Mont. Code Ann. § 16–6–301(1) (1989). The Browns operated a grocery store in Hays, Montana, within the exterior boundaries of the Fort Belknap Indian Reservation. Caroline Brown is an enrolled member of the Fort Belknap Indian Community and Harley Brown is an Indian person residing within the boundaries of the Fort Belknap Reservation.

The Browns moved to dismiss the action, asserting the State of Montana lacked criminal jurisdiction over Indians for offenses occurring on the reservation. The Browns further moved to suppress certain evidence seized by law enforcement officials during a January 6, 1988, search of their store.[3] The district court denied both motions and the Browns petitioned the Montana Supreme Court for a writ of supervisory control or other appropriate relief. The court

denied the Browns' application for supervisory control, holding, *inter alia*, a criminal proceeding could be brought in state court for alleged violations of state liquor laws by Indian persons in Indian country. *Brown v. District Court*, 238 Mont. 248, 777 P.2d 877 (1989).

On November 9, 1989, the Fort Belknap Tribal Court, pursuant to motion of the Community, ordered the return of the evidence seized during the search of the Browns' store. The tribal court subsequently issued a writ of assistance commanding the Bureau of Indian Affairs ("BIA") to retrieve the property from the Blaine County Sheriff's Office. In response, the Blaine County Attorney obtained a protective order from the Blaine County district court, providing for the continued retention of the evidence by the Blaine County Sheriff's Office. The protective order also purported to "excuse" all law enforcement officers of Blaine County and officers of the district court from complying with any tribal court order to the contrary.

On December 18, 1989, the Community instituted the present action, seeking declaratory and injunctive relief as against the State of Montana. The Community asserts the State of Montana, in attempting to enforce state criminal laws within reser-

ed States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

2. The State of Montana, in moving for summary judgment, asserts plaintiff's action is barred by the Eleventh Amendment to the United States Constitution. The state's argument is well taken, given the fact the State of Montana is the sole defendant named in the Community's complaint. *See, Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 [105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114] (1985), *citing, Alabama v. Pugh*, 438 U.S. 781 [98 S.Ct. 3057, 57 L.Ed.2d 1114] (1978) (per curiam) ("[u]nless a State has waived its Eleventh

Amendment immunity or Congress has overridden it ... a State cannot be sued directly in its own name regardless of the relief sought."). The Community's argument to the contrary is unpersuasive. *See, Blatchford v. Native Village of Noatak*, — U.S. — [111 S.Ct. 2578], 115 L.Ed.2d 686 (1991) (Eleventh Amendment precludes suits by Indian tribes against states without their consent). Nevertheless, the court deems it appropriate to enter this memorandum, recognizing the eventual likelihood of the Community amending their complaint to add additional defendants and thereby avoid the preclusive effect of the Eleventh Amendment.

3. On January 6, 1988, search warrants for the Browns' store were issued by the Blaine County Justice Court and the Fort Belknap tribal court. A search of the Browns' store was effected pursuant to the tribal court warrant and significant quantities of beer and wine products were seized. The seized goods were subsequently stored at the Blaine County Sheriff's Office.

vation boundaries against enrolled members of federally recognized Indian tribes, has infringed upon the Community's right to self-government. Accordingly, the Community requests, *inter alia*, an order enjoining the state from attempting to enforce state criminal laws within the reservation boundaries against Indian persons and, furthermore, from interfering with tribal court orders regarding the seized evidence. The Community invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 1362 and 1343.

## DISCUSSION

■ In asserting the authority to enforce its liquor laws within reservation boundaries among tribal members or other Indians, the State of Montana relies on the Supreme Court's decision in *Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). In *Rice*, the operator of a small general store on the Pala Reservation in California appealed a district court decision requiring her to obtain a state license for the retail sale of liquor. The Pala Band of Mission Indians had adopted an ordinance permitting the sale of intoxicating beverages provided such sales were in conformity with the laws of California. · *Rehner v. Rice*, 678 F.2d 1340, 1342 (9th Cir.1982), *rev'd*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983).

The Ninth Circuit Court of Appeals reversed the district court, holding a state's regulatory jurisdiction to license liquor transactions or distribute liquor in Indian country was preempted by 18 U.S.C. § 1161.[4] The Supreme Court granted certiorari and reversed the Ninth Circuit, stating, "[O]ur examination of § 1161 leads us to conclude that Congress authorized, rather than preempted, state regulation over Indian liquor transactions." 463 U.S. at 726, 103 S.Ct. at 3299.

It is clear then that Congress viewed § 1161 as abolishing federal prohibition, and as legalizing Indian liquor transactions as long as those transactions conformed both with tribal ordinances and state law. It is also clear that Congress contemplated that its absolute but not exclusive power to regulate Indian liquor transactions would be delegated to the tribes themselves, and to the States, which historically shared concurrent jurisdiction with the Federal Government in this area.

463 U.S. at 728–29, 103 S.Ct. at 3300–01. In addition, the Court noted the presumption that states have no power to regulate the affairs of Indians on reservations was unwarranted in the narrow context of liquor regulation. 463 U.S. at 723, 103 S.Ct. at 3298.

The Community views *Rice* as inapposite to the present case. Instead, the Community submits this matter is governed by *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), wherein the Court stated:

[W]hen Congress delegated its authority to control the introduction of alcoholic beverages into Indian country, it did so to entities which possess a certain degree of independent authority over matters that affect the internal and social relations of tribal life. Clearly the distribution and use of intoxicants is just such a matter.

419 U.S. at 557, 95 S.Ct. at 718. The Community asserts *Mazurie* established tribal sovereignty in the area of liquor licensing and distribution, thereby precluding any state regulation in the area and, most assuredly, criminal jurisdiction to prosecute Indian persons.

The Supreme Court expressly rejected the interpretation of *Mazurie* advanced by the Community with respect to states' regulatory jurisdiction. *Rice, supra*, 463 U.S. at 721, 103 S.Ct. at 3297. While the *Mazurie* decision clearly acknowledges the tribes' authority to regulate the possession

---

4. Section 1161 provides:
   The provisions of sections 1154, 1156, 3113, 3488, and 3618, of this title shall not apply within any area that is not Indian country, nor to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country....
   18 U.S.C. § 1161.

and sale of alcohol on reservations, it did not abrogate the state's concurrent authority over the same. *Rice*, 463 U.S. at 733, 103 S.Ct. at 3303.

> Application of the state licensing scheme does not 'impair a right granted or reserved by federal law.' *Kake Village [v. Egan]*, 369 U.S. [60] at 75 [82 S.Ct. 562, 571, 7 L.Ed.2d 573 (1962)]. On the contrary, such application of state law is 'specifically authorized ... by Congress ... and [does] not interfere with federal policies concerning the reservations.' *Warren Trading Post Co. v. Arizona Tax Comm'n*, 380 U.S. 685, 687 n. 3 [85 S.Ct. 1242, 1243 n. 3, 14 L.Ed.2d 165] (1965).

*Id.* at 734–35, 103 S.Ct. at 3303–04.

The Community alleges *Rice* is distinguishable because the decision therein was predicated on certain historical findings absent from the present action, namely, the lack of any prior attempts by the State of Montana to regulate the possession and sale of liquor on Indian reservations. The Community's argument is misplaced. The historical findings relied on *Rice* did not involve the State of California's attempts to enforce its liquor code on Indian reservations, but rather the fact that "control of liquor has historically been one of the most comprehensive federal activities in Indian affairs." *Rice*, 463 U.S. at 722, 103 S.Ct. at 3297, *quoting*, F. Cohen, Handbook of Federal Indian Law 307 (1982 ed.).

> The Colonists regulated Indian liquor trading before this Nation was formed, and Congress exercised its authority over these transactions as early as 1802.... Congress imposed complete prohibition by 1832, and these prohibitions are still in effect subject to suspension conditioned on compliance with state law and tribal ordinances.

*Id.* at 722, 103 S.Ct. at 3297.

*Rice* clearly established a state's right to regulate the possession and sale of liquor by Indians in Indian country. However, *Rice* is not dispositive in that the Court did not address the issue presented herein, namely, a state's authority to prosecute Indian persons for violations of state liquor laws occurring in Indian country.[5] The State of Montana contends Congress would not have provided states the authority to regulate liquor transactions on reservations without the concomitant ability to enforce, through criminal prosecutions, its liquor laws. This court disagrees.

When the Twenty–First Amendment repealed the federal penalties for the sale of liquor, all Indian country remained "dry" by federal law; and for the next twenty years it remained a crime, under 18 U.S.C. § 1154,[6] to sell liquor in Indian country. *Rehner v. Rice, supra*, 678 F.2d at 1352

---

5. *Rice* addressed the limited issue of whether a state liquor license was necessary for the retail sale of liquor on a reservation. In fact, the Court acknowledged its decision did not reach the issue of federal criminal jurisdiction under 18 U.S.C. § 1161. "We also note that it appears the court [Court of Appeals] was interpreting the reach of *federal criminal jurisdiction* under § 1161 as much as it was deciding the scope of state jurisdiction. In the light of the fact that the Federal Government was not a party below, we do not understand this aspect of the court's holding", 463 U.S. at 734 n. 18 [103 S.Ct. at 3303 n. 18]. Furthermore, the Court could not have addressed the issue presented by the present action given the fact that the State of California exercises general criminal jurisdiction over Indian country, pursuant to 18 U.S.C. § 1162, and may enforce directly any substantive criminal provisions governing liquor sales on Indian reservations. 463 U.S. at 741 n. 4 [103 S.Ct. at 3294 n. 4] (Blackmun, J., dissenting).

6. Section 1154 provides:

   Whoever sells, gives away, disposes of, exchanges, or barters any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or other intoxicating liquor of any kind whatsoever, except for scientific, sacramental, medicinal or mechanical purposes, ... to any Indian to whom an allotment of land has been made while the title to the same shall be held in trust by the Government, or to any Indian who is a ward of the Government under charge of any Indian superintendent, or to any Indian, including mixed bloods, over whom the Government, through its departments, exercises guardianship, ... shall, for the first offense, be fined not more than $500 dollars or imprisoned not more than one year, or both; and, for each subsequent offense, be fined not more than $2,000 or imprisoned not more than five years, or both.

   18 U.S.C. § 1154.

(Goodwin, J., dissenting). In 1953, Congress enacted 18 U.S.C. § 1161, which allowed Indian tribes to regulate the introduction of liquor into Indian country, provided state law was not violated. *Mazurie, supra,* 419 U.S. at 547, 95 S.Ct. at 712, *citing,* 18 U.S.C. § 1161.[7] Congress took care, however, to lift the criminal penalties previously imposed upon liquor traffic with Indians only so long as the newly legalized "transaction" conformed with state laws. *Rehner,* 678 F.2d at 1352 (Goodwin, J. dissenting), *citing,* 18 U.S.C. § 1161. *see also, Rice,* 463 U.S. at 722, 103 S.Ct. at 3297 ("these prohibitions [on Indian liquor trading] are still in effect subject to suspension conditioned on compliance with state law and tribal ordinances."); Cohen, at 306–307 ("This provision [prohibiting the sale of liquor to an Indian person] is still in the code as part of 18 U.S.C. § 1154, but is confined to Indian country by 18 U.S.C. § 1161 and can be conditionally suspended by enactment of a tribal ordinance pursuant to the latter section.").

■ The federal statutes prohibiting the sale and possession of liquor in Indian country, namely 18 U.S.C. §§ 1154 and 1156,[8] remain in effect despite the enactment of 18 U.S.C. § 1161. *see, Mazurie, supra* (non-Indians operating a bar without the requisite tribal liquor license were convicted, in federal court, of introducing "spirituous beverages" into Indian country, in violation of 18 U.S.C. § 1154). The federal statutes are suspended, however, by

compliance with state liquor laws and tribal ordinances.

Accordingly, state liquor laws must necessarily provide "the standard of measurement to define lawful and unlawful activity on the reservation." *Rice,* 463 U.S. at 744 n. 7, 103 S.Ct. at 3308 n. 7 (Blackmun, J., dissenting), *quoting, Applicability of the Liquor Laws of the State of Montana on the Rocky Boy's Reservation,* 78 I.D. 39, 40 (1971). *see also* Cohen, at 308 ("[S]ection 1161 incorporates state liquor laws as a standard of measurement to define what conduct is lawful or unlawful under federal law...."). *Id.* at 744 n. 8, 103 S.Ct. at 3308 n. 8. An act or transaction in violation of either applicable state liquor laws or tribal ordinances necessarily invokes the federal penalties conditionally set aside by section 1161. *see,* Cohen, at 308. Based on the foregoing analysis, this court concludes that while the State of Montana has the authority, pursuant to 18 U.S.C. § 1161, to regulate liquor transactions in Indian country, the federal government retains criminal jurisdiction to enforce the penalty provisions of 18 U.S.C. §§ 1154 and 1156 for violations of state liquor laws.

CONCLUSION

The Community's action against the State of Montana is barred by the Eleventh Amendment to the United States Constitution. Consequently, IT IS HEREBY ORDERED that the State of Montana's motion for summary judgment be, and the same hereby is, GRANTED. The Community's motion for summary judgment is

---

7. In 1974, the Fort Belknap Community Council enacted ordinance 3–74, entitled "Ordinance Legalizing the Introduction, Sale, or Possession of Intoxicants", which provides, in part:
NOW THEREFORE BE IT ORDAINED that the introduction, sale or possession of alcoholic beverages shall be lawful within the Indian country under the jurisdiction of the Fort Belknap Indian Community, provided that such introduction, sale, or possession, is in conformity with the laws of the State of Montana.
Ordinance 3–74 *is apparently enforced under* Title V, Section 1.81 of the Fort Belknap Tribal Code, which prohibits violations of Tribal law. However, neither side has provided the court a copy of Title V, Section 1.81 and, as a result, the court is unaware of the potential criminal pen-

alties for violation of ordinance 3–74. Furthermore, the court is unaware of whether, historically, the Community has prosecuted Indian persons for violating ordinance 3–74.

8. Section 1156 provides:
Whoever, except for scientific, sacramental, medicinal or mechanical purposes, possesses intoxicating liquors in Indian country or where introduction is prohibited by treaty or an Act of Congress, shall, for the first offense, be fined not more than $500 or imprisoned not more than one year, or both; and, for each subsequent offense, be fined not more than $2,000 or imprisoned not more than five years, or both.
18 U.S.C. § 1156.

**954**

likewise DENIED. The Community may, however, file an amended complaint in this matter within ten (10) days of the date hereof.

IT IS SO ORDERED.