OPINION OF THE COURT
Simons, J.
This appeal requires the Court to assess the validity of tax *422 regulations applicable to cigarette sales made on Indian reservations located in New York State. Although the challenged regulations are designed to prevent the avoidance of State taxes by non-Indians who purchase untaxed cigarettes from Indian retailers, and the incidence of the sales tax is intended to be borne by the ultimate non-Indian consumer, the tax provisions nevertheless regulate, to a significant degree, trade between wholesale distributors and their Indian purchasers, an area that relevant decisions of the Supreme Court and this Court have found preempted by Federal law. Accordingly, there must be a reversal.
I
Under New York Tax Law § 471 (1), a tax is imposed on all cigarettes purchased in New York. The tax is paid by the purchase of stamps which must be affixed to the cigarette packages as a precondition to the first taxable sale by the wholesaler or distributor. The tax is added and collected as a part of the selling price of the cigarettes along the distribution chain, until it is ultimately added to the retail price and is paid by the consumer.
Indians and Indian tribes are exempt from State taxation within their own territory and wholesale dealers may sell unstamped cigarettes to them. Consequently, many non-Indians travel to Indian reservations to buy unstamped cigarettes and avoid the sales tax which should attach to all sales to non-Indians. In an effort to prevent this circumvention of the sales tax and prevent the sale of untaxed (unstamped) cigarettes to non-Indians at retail outlets on Indian reservations located in New York, the State Commissioner of Taxation and Finance adopted the regulations now challenged.
Under these regulations, only reservation retailers who have registered with the State Department of Taxation and Finance are permitted to purchase unstamped cigarettes, and then only in a predetermined amount calculated by the Department to approximate "probable demand of qualified Indian consumers in the trade territory” (20 NYCRR 335.7 [d] [1] [now 20 NYCRR 336.7 (d) (1)]; see, 20 NYCRR 335.6 [d] [now 20 NYCRR 336.6 (d)]).* Indian retailers may purchase an *423 unlimited quantity of stamped cigarettes but, with respect to unstamped cigarettes, the wholesalers supplying them must (1) request a copy of the retailer’s tax exempt certificate, (2) keep records of their sales, (3) obtain approval prior to each sale, from either the Indian nation or the Department of Taxation and Finance, of the quantity of untaxed cigarettes which may be delivered, and (4) after completion of the sale, forward to the Department of Taxation and Finance a copy of the retailer’s tax-exempt coupon, a document issued by the Department and entitling the retailer to receive a predetermined maximum quantity of untaxed cigarettes.
II
Plaintiffs are business enterprises which sell cigarettes at wholesale to Indians on various Indian reservations in New York State. They commenced these actions claiming that the regulations, which impose additional burdens on their dealings with the Indians, are preempted by the Indian trader statutes (25 USC § 261 et seq.). The trial court granted plaintiffs’ motion for summary judgment, and the Appellate Division initially affirmed. It found that "the tax scheme under review here fails because it imposes some burden, although only minimal, on the Indian trader contrary to the Court of Appeals interpretation of the applicable Supreme Court decisions” (164 AD2d 300, 303, relying on Herzog Bros. Trucking v State Tax Comma., 69 NY2d 536, vacated and remanded 487 US 1212, prior determination adhered to on remand 72 NY2d 720).
On appeal, the United States Supreme Court vacated the judgment and remanded to the Appellate Division "for further consideration in light of Oklahoma Tax Commission v Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 US [505]).” (— US —, 112 S Ct 926, 117 L Ed 2d 99.) Upon reconsideration, the Appellate Division reversed itself, reading the Potawatomi decision to indicate that the "minimal burdens” imposed upon Indian traders by New York’s tax scheme are not barred by Federal preemption, a holding which would create considerable uncertainty about the reasoning underlying our decision in Herzog.

Ill

In Herzog Bros. Trucking v State Tax Comma. (69 NY2d 536, supra), fuel distributors challenged a State motor fuel tax *424 assessed against them. Like the cigarette tax, the motor fuel tax was designed to be paid ultimately by the consumer as it passed through the distribution chain. The legislation initially imposed a tax on wholesale sales of motor fuel to Indian retailers on Indian reservations but allowed a refund to distributors for previously paid taxes on fuel sold to Indians exempt from taxation. The Federal Indian trader statutes (25 USC § 261 et seq.), enacted pursuant to article I, § 8, cl (3) of the Federal Constitution, vest the Commissioner of Indian Affairs with the sole power and authority to regulate trade with Indians and, because the tax scheme in Herzog imposed obligations upon wholesale Indian traders, we held that it was preempted by Federal law (see, Herzog Bros. Trucking v State Tax Commn., 69 NY2d, at 545-546). Upon remand from the United State’s Supreme Court, we adhered to that determination (see, Herzog Bros. Trucking v State Tax Commn., 72 NY2d 720, supra). We conclude the regulations at issue in this case suffer from the same infirmity.
IV
As a general proposition Congress has preempted the field of regulating Indian traders. As the Supreme Court stated when referring to the Indian trader statutes and the regulations promulgated thereunder by the Commissioner of Indian affairs, "[tjhese apparently all-inclusive regulations and the statutes authorizing them would seem in themselves sufficient to show that Congress has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders” (see, Warren Trading Post v Tax Commn., 380 US 685, 690).
Notwithstanding the body of law supporting this view, defendants contend that "minimal burdens” may be placed upon wholesale distributors, i.e., Indian traders, if the tax is ultimately borne by non-Indian consumers and the tax scheme is designed merely to prevent the evasion by those consumers of a legally imposed tax. They rely principally on two Supreme Court decisions in which the Court approved tax schemes which required Indian retailers to collect a tax validly imposed on non-Indian purchasers (see, Moe v Salish & Kootenai Tribes, 425 US 463; Washington v Confederated Tribes, 447 US 134). Explaining the result in Confederated Tribes, the Court stated that: "[tjhe Indian traders statutes * * * incorporate a congressional desire comprehensively to *425 regulate businesses selling goods to reservation Indians for cash or exchange [citing Warren Trading Post v Tax Commn., supra], but no similar intent is evident with respect to sales by Indians to nonmembers of the Tribe” (see, Washington v Confederated Tribes, 447 US, at 155-156, supra [emphasis added]). Thus, the Supreme Court deemed it acceptable to place "minimal burdens” upon Indian retailers selling goods to non-Indians to aid a State in collecting and enforcing its taxes validly imposed upon non-Indian purchasers (see, Washington v Confederated Tribes, 447 US, at 159, supra).
Defendants assert that the tax regulations at issue here are substantially the same as those at issue in Moe and Confederated Tribes. They contend that inasmuch as the Supreme Court approved the imposition of precollection and record-keeping requirements on Indian retailers in those cases, the State can lawfully impose them on wholesalers, who are just one step further back on the distribution chain. Moe and Confederated Tribes involved burdens placed on Indian retailers dealing with non-Indians, rather than on wholesalers dealing with Indians, a significant difference, but defendants contend that a subsequent decision of the Supreme Court, Oklahoma Tax Commn. v Potawatomi Tribe (498 US 505, supra), makes it clear that a State’s interest in enforcing its taxes may also justify the imposition of certain regulatory burdens on wholesalers supplying Indian retailers as an aid to enforcement of State tax laws. Indeed, the Supreme Court remanded the instant case to the Appellate Division for further consideration in light of the Potawatomi case.
V
In Potawatomi, the Supreme Court held that Oklahoma could not bring suit against the Potawatomi tribes for payment of uncollected cigarette taxes due for past sales made on the reservation (see, Oklahoma Tax Commn. v Potawatomi Tribe, supra). Because the State sued the tribe seeking payment for past taxes, the Court’s decision was based upon the doctrine of sovereign immunity rather than on the Indian trader statutes. Oklahoma, noting that the Moe and Confederated Tribes decisions gave States a right to require Indian retailers to collect a State-imposed cigarette tax on their sales to non-Indians, contended that if the tribes were immune from suit these decisions gave the States a right without a remedy. In response to that contention, the Supreme Court stated:
*426 "There is no doubt that sovereign immunity bars the State from pursuing the most efficient remedy, but we are not persuaded that it lacks any adequate alternatives. We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State [citation omitted]. And under today’s decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation, [Confederated Tribes], supra, at 161-162, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores, City Vending of Muskogee, Inc. v Oklahoma Tax Comm’n, 898 F.2d 122 (CA10 1990).” (Oklahoma Tax Commn. v Potawatomi Tribe, 498 US, at 514, supra [emphasis added].)
Defendants here rely on this emphasized language, claiming it establishes that States may impose some burden on wholesalers supplying goods to Indian retailers to assist in the collection of valid State taxes. However, we do not interpret the Supreme Court’s statement as altering the established rule stated in Warren Trading Post v Tax Commn. (380 US, at 690, supra) that Congress has taken the matter of regulating Indian traders so fully in hand that no room remains for State laws imposing additional burdens upon them. The language cites none of the relevant decisions in this area and, as interpreted by defendants, is contrary to the present state of the law on the subject. In the past, the Supreme Court has approved of cigarette seizures from wholesalers only where (1) the tribes to whom the cigarettes are to be sold have refused to fulfill tax collection and remittance obligations incurred on past sales, and (2) the seizures take place off the reservation "where state power over Indian affairs is considerably more expansive than it is within reservation boundaries” (see, Washington v Confederated Tribes, 447 US, at 161-162, supra). Here, the State is not seeking to collect taxes due on past sales, but is attempting, prospectively, to collect a tax on sales to be made directly on the reservation.
Just when "assessing wholesalers who supplied unstamped cigarettes to the tribal stores” would be justified remains unclear from the Supreme Court’s decision, although its use of the past tense "supplied” indicates that the method might somehow be used to retroactively collect taxes unpaid on past *427 sales. But we do not read the Court’s suggestions for collection remedies as altering the established law regarding Federal preemption or validating comprehensive regulation by a State of the relationship between Indian traders and their Indian purchasers.
VI
To the extent that the Supreme Court’s decisions in Moe, Confederated Tribes and Potawatomi may be read as validating the imposition of minimal burdens on Indian retailers and Indian traders, we conclude that the tax regulations at issue here impose significant burdens on the wholesaler. They dictate to Indian traders the number of unstamped cigarettes they can sell to reservation Indians and direct with whom they may trade (see, 20 NYCRR 335.7 [b] [3]; [c], [d] [6] [now 20 NYCRR 336.7 (b) (3); (c), (d) (6)]). The tax scheme requires wholesale distributors to prepay taxes on all cigarettes delivered on the reservations in excess of the predetermined maximum amount and, with respect to those cigarettes, imposes a sales tax on Indian retailers.
While the State’s efforts to avoid what it perceives as pervasive tax avoidance by non-Indians is understandable, this tax scheme attempts to regulate in an area which Congress has taken "fully in hand” (see, Warren Trading Post v Tax Commn., 380 US, at 690, supra). It impinges on the Federal interest, as evidenced by the Indian trader statutes, to "comprehensively * * * regulate businesses selling goods to reservation Indians” (see, Washington v Confederated Tribes, 447 US, at 155, supra), and it impinges on the authority of the Commissioner of Indian Affairs to determine "the kind and quantity of goods and the prices at which such goods shall be sold to the Indians” (see, 25 USC § 261). Furthermore, to the extent that the sales tax is imposed on all stamped cigarettes, the regulations place "financial burdens on [plaintiffs] or the Indians with whom [they] deal[ ] in addition to those Congress or the tribes have prescribed, and could thereby disturb and disarrange the statutory plan Congress set up in order to protect Indians against prices deemed unfair or unreasonable by the Indian Commissioner” (see, Warren Trading Post v Tax Commn., 380 US, at 691, supra). Manifestly, the tax regulations before us regulate trade with Indians to a significant degree. As such, they are barred by Federal preemption and cannot be applied to cigarette wholesale dealers involved in *428 trading with Indians on reservations located in New York State.
Accordingly, the order of the Appellate Division should be reversed, with costs, the respective plaintiffs’ motions for summary judgment granted, the defendants’ cross motions to dismiss or for summary judgment denied, and judgment granted to plaintiffs in accordance with this opinion.
Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa and Smith concur.
Order reversed, etc.

 The tribe or nation may submit statistical information relating to probable demand, or the Department of Taxation will calculate the demand based upon average New York consumption per capita (20 NYCRR 335.7 [d] [2] [now 20 NYCRR 336.7 (d) (2)]).