OPINION OF THE COURT
David Demarest, J.
ST. REGIS GROUP

Facts:

On December 1, 1993, the New York State Police stopped a tractor trailer along Route 37 in the Town of Massena, New. York, for an apparent violation of the truck mileage tax provisions under article 21 of the Tax Law. During the course of the officer’s investigation, the driver indicated he was transporting liquor and provided the officer with liquor manifests and shipping documentation that 1,704 cases of liquor were consigned to the St. Regis Group on the Mohawk Akwesasne Reservation and indicated that the St. Regis Group possessed New York State liquor distributor permit number 9361799. The officer became suspect as it was his understanding that the St. Regis Group was not a registered New York State liquor distributor; and furthermore, typically, such registration numbers were preceded with the letter "L” and followed by four numbers. The officer radioed for assistance and upon consultation with an investigator, New York State Police Bureau of Criminal Investigation, concluded there were reasonable grounds to believe the permit number was fictitious and that the liquor was being imported illegally into New York State in violation of articles 18 and 37 of the Tax Law. Upon consultation with James Zacearía, principal attorney with the New York State Office of Tax Enforcement, it was discovered that the registration number was fictitious and that neither the St. Regis Group, nor the A. Smith Bowman Distillery was a registered New York State liquor distributor. The liquor and tractor trailer were then seized pursuant to Tax Law § 1845.

*385
Procedural History:

In compliance with Tax Law § 1845 (c), the Tax Department, within five business days of the temporary seizure, moved in St. Lawrence County Supreme Court (the county in which the temporary seizure took place) for an order confirming the temporary seizure. Upon oral argument by both parties’ counsel, the court reserved decision as to whether "there is a substantial probability that the Department will prevail on the issue of forfeiture.”
The Tax Department was required to commence an action for forfeiture within 45 days from the date of the seizure in accordance with section 1845 (d). St. Regis Group asserted lack of personal jurisdiction in its March 8, 1994 notice of motion (seeking dismissal of the action pursuant to CPLR 3211 [a] [3]), however, on the return date defendant’s counsel consented to personal jurisdiction as CPLR 306-b (b) would have granted the Tax Department 120 days following dismissal to commence a new action. Thus, the Tax Department is now deemed to have appropriately commenced the forfeiture action.
WAYNE STEHLIN

Facts:

On December 3, 1993, the New York State Police stopped a tractor trailer along Route 37 in the Town of Massena, New York, which displayed neither a front license plate nor a truck mileage tax sticker pursuant to article 21 of the Tax Law. During the course of the officer’s investigation the driver stated he was transporting liquor and produced documentation that the cargo consisted of 1,728 cases of liquor consigned to W. Stehlin doing business as Windsail Trading to be delivered to the Mohawk Akwesasne Reservation. However, the driver did not possess the standard manifest form for liquors, i.e., Form MT-132, required by the Tax Law, nor did his documentation clearly identify the owner of the liquor or a registered New York State liquor distributor responsible for the importation. The documents presented to the investigating officer created reasonable grounds to believe the liquor was being imported illegally into New York State in violation of articles 18 and 37 of the Tax Law. Upon consultation with James Zacearía, principal attorney with the New York State Office of Tax Enforcement, it was discovered that none of the parties identified by the documentation aboard the tractor *386 trailer was a registered New York State liquor distributor. The liquor and tractor trailer were seized pursuant to Tax Law § 1845.

Procedural History:

In compliance with Tax Law § 1845 (c), the Tax Department, within five business days of the temporary seizure, moved in St. Lawrence County Supreme Court (the county in which the temporary seizure took place) for an order confirming the temporary seizure. Upon oral argument by both parties’ counsel, the court reserved decision to determine whether "there is a substantial probability that the Department will prevail on the issue of forfeiture.” In accordance with section 1845 (d) the Tax Department commenced an action for forfeiture within 45 days from the date of the seizure.
CURRENT MOTIONS: ST. REGIS AND WAYNE STEHLIN
Both St. Regis, by notice of motion dated March 8, 1994, and Wayne Stehlin, by notice of motion dated February 16, 1994, have moved for an order dismissing the forfeiture action pursuant to CPLR 3211 (a) (3), lack of subject matter jurisdiction, asserting that exclusive jurisdiction over these seizure cases lies in the Federal courts since New York has no jurisdiction to enforce its tax laws, or concomitant forfeiture laws, with respect to Indian commerce on an Indian reservation.
In response, plaintiff attempts to characterize Tax Law article 18 as a regulation and distribution statute, and in so doing, relies on the United States Supreme Court’s holding in Rice v Rehner (463 US 713 [1983]). They argue Congress has acted specifically to establish joint Federal, State and tribal jurisdiction over the sale and distribution of alcoholic beverages on Indian reservations. In turn, defendants urge plaintiff’s reliance on Rice is misplaced since the liquor was seized in accordance with a tax statute; and no tax being due on Indian commerce, the seizure was unlawful.
There has been a considerable amount of uncertainty and turmoil with respect to the applicability of the New York tax seizure statutes, i.e., section 1848 (motor fuel), section 1846 (cigarettes), and now — effective November 1, 1993 — section 1845 (liquor), with regard to Indian traders. (See, Herzog Bros. Trucking v State Tax Commn., 72 NY2d 720 [1988]; Attea & Bros. v Department of Taxation & Fin., 81 NY2d 417 [1993], *387 cert granted — US —, 114 S Ct 380, 126 L Ed 2d 329 [1993].) Although these issues are yet to be decided by the United States Supreme Court, this court is constrained to interpret and apply the law in New York State, as it stands in its present posture.
The United States Constitution, applicable legislation and treaties recognize tribal self-government whereby the Federal Government preempts regulation of the Indian trader. The Federal Indian Trader statutes (25 USC §§ 261-264), which vest regulatory powers respecting Indian trade with the Commissioner of Indian Affairs, find their basis in article I (§ 8, cl [3]) of the US Constitution. More specifically, 18 USC § 1154 criminalizes the sale or possession of liquor in Indian country and imposes penalties for unlawful possession. (18 USC § 1156.) However, 18 USC § 1161 decriminalizes such sale or possession where "such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe * * * certified by the Secretary of the Interior, and published in the Federal Register.” Hence, it is apparent that such language specifically incorporates State law into Federal law, and in no way alienates to the separate States the Federal Government’s regulatory powers over the Indian trader. (See, United States v Cowboy, 694 F2d 1228, 1236 [10th Cir 1982].) Section 1161 fulfills the need to "provide 'the standard of measurement to define lawful and unlawful activity on the reservation.’ Rice, 463 U.S. at 744 n. 7” (Fort Belknap Indian Community of Fort Belknap Indian Reservation v State of Montana, 793 F Supp 949, 953 [D Mont 1992]). Fort Belknap held that while the State had the authority to regulate the possession and sale of liquor by Indians in Indian country, the Federal Government retains criminal jurisdiction pursuant to sections 1154 and 1156 to enforce the penalties for violations of State liquor laws. The retention of Federal jurisdiction is further evidenced by the existence of 18 USC §§ 3113, 3488, 3668-3670 which authorize Federal authorities to seize or commence forfeiture proceedings resulting from violations of Federal Indian liquor laws (18 USC § 1161). It follows that despite State law being used as a standard of measurement to determine whether introduction of alcohol into Indian country is lawful, the enforcement mechanisms as provided for in Federal law respecting alcohol on Indian reservations are exclusively a Federal concern, and the Federal courts have exclusive jurisdiction over such seizures.
*388 The United States Supreme Court in Rice v Rehner (463 US 713 [1983], supra) held that 18 USC § 1161 authorized, rather than preempted, State regulation of Indian liquor laws. The case involved a Federally licensed Indian trader operating a store on the Pala Indian Reservation in California who applied for an exemption to a State law requiring a State license for the retail sale of alcohol for off-premises consumption. Upon being denied the exemption she filed suit seeking declaratory judgment that she did not need a State license and an order requiring wholesalers sell her liquor. The Supreme Court held that since the Pala Tribe had adopted an ordinance permitting the sale of liquor in conformance with State law, which ordinance had been approved by the Secretary of the Interior in accordance with 18 USC § 1161, she would be required to obtain a State license.
Although Rice (supra) did not address who was authorized to enforce State liquor laws, applicable by virtue of Federal law, the plaintiff herein posits that the seizure and forfeiture laws perform a regulatory function and the State, pursuant to Rice, has jurisdiction to regulate the licensing and distribution of alcohol. In support of its assertion, the State argues that the general regulatory provisions incorporated in the recent amendments to article 18 of the Tax Law apply to the distribution and sale of liquor on New York State Indian reservations.
To the extent the State urges that it has the right to apply "generally applicable registration and regulatory provisions of Tax Law, Article 18 on Indian reservations within the state”, it mischaracterizes the obvious intendment and function of Tax Law article 18 which is "an act to amend the tax law and criminal procedure law, in relation to enhancing the enforcement of the taxes on alcoholic beverages with respect to liquors and making an appropriation therefor” (Preamble, 1993 McKinney’s Session Laws of NY, ch 508). Accordingly, where taxes would not be due and owing on liquor being imported into New York State, the objective (collection of taxes) of the seizure and forfeiture amendments to the Tax Law would be nullified. The function of article 18 of the Tax Law is not to regulate the possession and sale of liquor. That end is accomplished by the Alcoholic Beverage Control Law.[1] *389 In fact, the September 23, 1993 emergency regulations which were to be codified at 20 NYCRR 323.2 (a), (b) (1), (2) endeavored to further clarify the statute’s intendment with respect to the definitions of "Distributors” and "imports or causes to be imported” providing that in order for a distributor to be an "importer” within the intendment of the statute it must be "subject to New York State’s taxing jurisdiction pursuant to federal decisional law interpreting the United States Constitution.” In any event, 20 NYCRR part 323, filed on November 1, 1993 as an emergency measure effective November 1, 1993, excepted from the distributor requirement "a sale, if any, as to which the State cannot impose such condition by reason of the United States Constitution or any laws enacted pursuant thereto.” (20 NYCRR 323.2 [a].)
To insure orderly and complete collection of taxes, New York Tax Law article 18 establishes an extensive and intricate system of recordation and registration of "Distributor^]”, as defined in section 420, and prohibits importation of liquor into New York by those who are not "registered” or fail to possess complete and proper shipping manifests. Such registration is "conditioned upon the obtaining of appropriate licenses pursuant to the alcoholic beverage control law” and "[n]o distributor, unless so registered, shall make any sale of alcoholic beverages within this state, except a sale, if any, as to which this state is without power to impose such condition.” (Tax Law § 421 [1] [emphasis added].)
In Ammex Warehouse Co. v Procaccino (85 Misc 2d 327, affd 55 AD2d 535 [1st Dept 1976]), the court observed that when sales of such commodities as liquor and tobacco are not subject to State tax, the State lacks power to tax such sales even though they take place within the State. Accordingly, the plaintiff in that case was not required to register as a distributor (or obtain a State liquor license). Since the sale of any commodity (whether it be motor fuel, cigarettes or liquor) on an Indian reservation to an Indian is exempt from sales and excise taxes, a similar exemption from the distributor recordation and registration requirements would be applicable to the defendants here.
The State’s seizure and failure to promptly return the *390 liquor upon learning the importer’s identity as an Indian trader, i.e., " '[a]ny person desiring to trade with the Indians on any Indian reservation’ ”[2] (25 USC § 262, as quoted in Herzog Bros. Trucking v State Tax Commn., 72 NY2d, supra, at 724) constitutes a burden on Indian traders which the New York Court of Appeals has held is impermissible because State law has been preempted by Federal law. Support for this lies in the Court of Appeals reasoning in Herzog and Attea (supra), wherein the Herzog Court held, "Congress has preempted the field of regulating trade with Indians on reservations and has left 'no room’ for the application of supplementary State tax laws, such as the one at issue, that impose 'additional burdens’ on Indian traders.” (Herzog Bros. Trucking v State Tax Commn., 69 NY2d 536, 546 [1987].)
Even upon reargument of an appeal, following remand by the United States Supreme Court (Herzog Bros. Trucking v State Tax Commn., 132 AD2d 809 [3d Dept 1987], cert granted and judgment vacated, 487 US 1212 [1988], prior determination adhered to on remand 72 NY2d 720 [1988]), the State’s taxing scheme forcing prepayment of taxes on motor fuels delivered to Indian retailers for resale to Indian and non-Indian customers, the New York Court of Appeals adhered to its determination that the Federal Indian Trader laws preempted State regulation, "the State of New York is without power to regulate or interfere with sales of motor fuel by Herzog to Indians on Indian reservations and, to the extent State requirements concerning registration, recordkeeping, filing of returns and claiming of refunds apply to such sales, the requirements are unconstitutional.” (Herzog Bros. Trucking v State Tax Commn., 69 NY2d, supra, at 540 [1987].)
Although Attea & Bros. v Department of Taxation (supra) *391 was remanded to the Third Department (181 AD2d 210, 212 [1992]) by the United States Supreme Court ( — US —, 112 S Ct 926, 117 L Ed 99 [1992]) for further consideration vis-á-vis its decision in Oklahoma Tax Commn. v Potawatomi Tribe (498 US 505 [1991]), the Appellate Division held that to the extent that "minimal burdens”[3] are placed upon Indian traders in collecting sales taxes on sales made to non-Indian purchasers, they are not barred by Federal preemption of the field of regulating trade with Indians. Upon appeal, the Court of Appeals (81 NY2d 417 [1993]) held that they did not interpret the language the Attea defendants relied on in Potawatomi to impose "some burden on wholesalers [Indian traders] supplying goods to Indian retailers to assist in the collection of valid State taxes” as altering the established rule in Warren Trading Post v Tax Commn. (380 US 685, 690 [1965]), that "Congress has taken the matter of regulating Indian traders so fully in hand that no room remains for State laws imposing additional burdens upon them.” (Attea & Bros. v Department of Taxation & Fin., 81 NY2d 417, 426 [1993].) Additionally, the Court of Appeals held that to the extent Potawatomi "may be read as validating the imposition of minimal burdens on Indian retailers and Indian traders, we conclude that the tax regulations at issue here impose significant burdens on the wholesaler” (at 427 [emphasis in original]).
Tax Law article 18 imposes on the Indian trader an elaborate recordation system for distributors to insure the collection of State taxes upon liquor bound for an Indian reservation, which taxes the State is not entitled to, unless such sales are made to non-Indian consumers subject to New York State’s taxing jurisdiction, and then only if the taxing scheme does not constitute an impermissible burden on Indian trade so as to be preempted by Federal Indian Trader statutes (25 USC § 261 et seq.).
The New York statute requires anyone who imports more than 90 liters of liquor annually into the State to register with the Department of Taxation and Finance as a "distributor”, unless the State is "without power to impose such condition” (Tax Law §421 [1]). Additionally, a valid license pursuant to the Alcoholic Beverage Control Law is a precondi *392 tian to being registered as a distributor. Further, the presumption of taxability without distinguishing Indian traders, as evidenced by this seizure, and the exhaustive "Requirement and Content of Invoice on the Sale of Liquors” are all indicia of the "significant burdens” Tax Law article 18 necessarily impose on the Indian trader as a wholesaler.
The content and structuring of Tax Law § 1848, respecting the seizure and forfeiture of motor fuel, is almost identical to that at issue herein, i.e., section 1845, and the Third Department in New York State Dept. of Taxation & Fin. v MacLeod (168 AD2d 802-803 [1990]) held that "inasmuch as the relevant tax statutes impose a burden on the Indian trader, they are preempted by Federal law” (citations omitted). In light of the Attea decision (supra) prohibiting only significant burdens on wholesalers, this court finds that the burdens imposed by the tax statutes at issue herein are significant and are, accordingly, preempted by Federal law.
Accordingly, the forfeiture action is hereby
Ordered dismissed, for lack of subject matter jurisdiction; and it is further
Ordered that the plaintiiFs motions for temporary seizure are now rendered moot.

. "It is hereby declared as the policy of the state that it is necessary to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages * * * such policy will best be carried out by empower *389 ing the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages” (Alcoholic Beverage Control Law § 2 [emphasis added]).

. Counsel for the St. Regis Group has represented to the court that it is a Native American corporation lawfully existing pursuant to the sovereign authority of the St. Regis Mohawk Tribe which conducts its transactions within Indian country so as to afford it status of an "Indian Trader.” Similarly, Wayne Stehlin is known to the plaintiff as a Native American Indian who resides on the Mohawk Akwesasne Reservation. Further, in both forfeiture actions it is uncontroverted that the shipments of liquor were bound for the Mohawk Akwesasne Reservation and plaintiff has failed to controvert that defendants are "[persons] desiring to trade with the Indians on any Indian reservation” as 25 USC § 262 has been applied in Central Mach. Co. v Arizona Tax Commn. (448 US 160 [1980], on remand 152 Ariz 131, 730 P2d 840, opn vacated 152 Ariz 134, 730 P2d 843, cert denied 481 US 1042 [1987]) and by the New York Court of Appeals in Herzog (72 NY2d 720 [1988], supra).

. The Attea tax scheme required prepayment of taxes on cigarettes by wholesalers which exceeded the quantity determined by the Department of Taxation and Finance as satisfying the personal needs of Indian consumers.